BREAUX, C. J.
This suit relates to the validity vel non of a contract under which the defendants claim the right to explore lands for oil, gas, and other minerals, of which plaintiffs became the owners by purchase from W. J. Thompson and Wm. T. Caldwell, on the 12th day of March, 1909.
In this transfer, the manager of plaintiffs in the oil fields represented them as agent.
This fact has some bearing, as will be seen later.
Prior to the 1st day of July, 1908, Thompson & Caldwell sold to defendants’ assigns the gas, oil, and other materials and right of ingress and egress for the purpose of enabling defendants to explore for oil and other minerals.
The transfers to defendants go back to the purchase by Lehman, under whom, by mesne conveyance, defendants hold.
Lehman, transferee, bound himself to pay to the owners at the time — Thompson & Caldwell — $200 annually for the product of each well on the land.
In case operations were not completed within three months from the date of the contract with Lehman, which contract was assigned to defendants, the grant was to become null and void, provided that the purchaser, to quote from the contract, “may prevent such forfeiture by paying from month to month to contractees at the time — Thompson & Caldwell — the sum of one hundred fifteen dollars until the well is completed.”
It was further agreed, when completed, it was to have the effect of “canceling all rental due under this provision during the remainder of the term of the contract.”
And, in case the purchaser “succeeded in bringing in a second well in paying quantities, then the contract was to continue in full force for two years, and as much longer as oil, gas or other minerals can be produced in. pajnng quantities.”
The defendants reserved the right, by paying $1, to put an end to the contract.
On the 2d day of August, 1908, Lehman transferred to B. G-. Dawes, trustee, all his rights to a certain lease, owned by him, “being the same lease executed to me by Wm. T. Caldwell and W. J. Thompson on the 31st of July, 1908, subject to all of the conditions of the lease.”
On the 17th day of September, 1908, Dawes, trustee, transferred to the Broussard Oil Company.
The terms of these transfers and the word *889 ing are those contained in the Lehman deed referred to above.
In time, the Vivian Oil Company succeeded to the Broussard Oil Company.
In these different transfers, the conditions were substantially the same.
The rights and responsibilities transferred in the first deed are those which the defendants now hold.
Payments were made by the Vivian Oil Company to Caldwell & Thompson while they were the owners.
These payments were made, in accordance with the requirement of the contract, from May, 1908, to and including March, 1909.
[1] One of plaintiff’s complaints is that no record of these different receipts of payment made by defendant, the Vivian Oil Company, by plaintiff’s vendor, was kept in the clerk’s •office of Caddo parish, in order that defendants might have recorded evidence showing that they had complied with the contract; that, as plaintiffs are third persons, they were not held bound by the duly recorded deed of Lehman and others; and that the recording •of the receipts was necessary in order to ■show compliance with the terms of the contract
Immediately after the plaintiffs, Busch-Everett Company, became the owners — that is, on March 30, 1909 — defendants tendered the monthly rental to Busch-Everett Company, plaintiffs, in accordance with the requirement of the contract.
This tender was refused by the plaintiffs, Busch-Everett Company.
It devolves upon plaintiffs to maintain the legality of their refusal of the tenders made in accordance with the stipulation of the contract.
These tenders extend to the date the defendants’ gas well was completed and was a producer, on the 5th day of September, 1909.
On the 7th day of September, 1909, following, defendants tendered to the plaintiffs the royalty on the well, all of which were refused by plaintiffs.
The first contention we will notice is that relating to the potestative condition alleged by plaintiffs, based on the $1 clause and the satisfaction of debts to the date of the contract.
The position or plaintiffs on this point is that the contractor was to drill a well within three months from the date of the contract. That, as he did not drill a well in the three months, the contract is null.
It must be borne in mind that, as part of the consideration paid by the contractor, to wit, §345, there was an additional sum of $460 paid at different times, in accordance with the terms and conditions of the contract between them.
The contract is synallagmatic.
[3] Taking this contract and considering it as a whole, it does not contain a potestative condition, for • the defendant companies and those from whom they hold their right to explore plaintiffs’ lands did not retain the right . to put an end to the contract at their will.
We have noted that defendants paid for all they received.,
Originally, the necessity for making those payments was clearly laid down in the contract.
It would have been different if the defendants had paid nothing and had retained the right to dissolve by merely paying §1, as the contract would have been entirely null, for the condition would then have been purely potestative; that is, if plaintiffs had sought to put an end to the contract because it was potestative.
But it is different. Not the least objection was made by plaintiffs. They did not wish to terminate the contract. The different amounts were paid.
[2] They cannot now be heard to urge that the contract contains a potestative condition which releases them from all obligation de *891 spite the fact that they have been benefited to the extent mentioned and to the extent that the well in question has proven beneficial.
The well was drilled without the plaintiffs urging any objection.
Their general manager (that is, the general manager of plaintiffs, to whom we have alluded before), moreover, had knowledge of the operations in the field. He was the general representative of plaintiff and had knowledge of the lease at the time that he signed the deed of purchase from the plaintiff.
The contract was serious and binding from the first, and defendants have done all they promised.
The contract was to drill for gas or oil. This was done in due time under the conditions.
All that was expected having been obtained, it was not possible to defeat the result by arguing that the contract contained a potestative condition.
This well has a decided value.
Some of the witnesses have estimated it, possibly, at an extravagant value of $25,-000.
Whether of that value or not, it would be inequitable to divest defendants of their rights after they have realized all they and plaintiffs had a right to expect at the date of the contract.
Moreover, the contract is synallagmatic, we have stated.
The obligor and the obligee (plaintiffs, parties of the first part, and defendants, parties of the second part) were bound to certain conditions, not at all of a potestative character.
Hue. vol. 7, p. 328, and Beudant Les Contrats de les Obligation, p. 101, are very clear upon the subject; that is, when there are mutual engagements.
There is no expression to the contrary in the Houssiere-Latreille Case, 119 La. 852, 44 South. 481, nor in Murry v. Barnhart, 117 La. 1031, 42 South. 489.
The facts upon this particular point in the cited cases are different. The parties of the second part, the Heyward Syndicate, had never performed their part of the obligation. They had, the court said, entirely failed. In consequence, the contract' was at an end.
We find here that there was performance.
To bring this proposition to a close, we will state that, after performance, it is too late to invoke the potestative condition, even if we concede that such a condition existed.
Potkier, from whom article 1174 of the French Civil Code has been borrowed (corresponding to the article 2034 of our Code upon the subject) — he, in turn, from the traditions of the Roman Civil Law — limits the potestative condition in its effect exclusively to the one by whom it is contracted.
Hue. vol. 7, p. 328, amplifies the idea in the fourth line.
The next ground urged by plaintiffs iS' that the contractors originally bound themselves to complete a well within three months from July 31, 1909, which defendants failed to complete, and consequently the contract was forfeited.
This would be quite true if there was nothing in the contract leaving it optional with defendants to prevent' the forfeiture' of their right by paying the amounts that: we have before mentioned.
This having been done, there was no forfeiture possible. It was the only object' of' the stipulation.
The next question is: Was the recorded lease, under which defendant's hold, effective against plaintiffs?
We think it was.
It was timely recorded in the clerk’s office prior in date to the sale under which the plaintiffs hold.
They certainly had at least' constructive *893 knowledge. They really had actual knowledge. The agent of plaintiffs knew of the lease.
The argument of plaintiffs at this point is that’ they had no legal notice of the fact (if it was a fact, as stated by plaintiffs) that the defendants had performed that which it was incumbent upon them to perform.
The defendants had made required payment; it was all that they had to do.
Plaintiffs had no right to assume that defendants had not performed their part of the contract.
In the next place, it is contended by plaintiffs that, under the terms and conditions of the contract, the defendants ought to have begun drilling the well so as to complete it within 90 days.
That is very true, provided the defendants had not availed themselves of the stipulation in the contract and prevented the forfeiture.
[4] Now as relates to a term:
It was really more of a condition than a term. The contract was to continue in force as long as the wells produced.
That was a condition, which, it may be, plaintiffs could have terminated by obtaining a judicial order to that effect.
But a contract of lease (and in this respect we consider the contract one of lease) may be entirely legal without a term, or a term may be so indefinite that only the court can determine its date.
Defendants have asked for damages.
We have considered their testimony, and have arrived at the conclusion that the claim is not sustained in this suit for damages. We will dismiss all claim by defendants for damages as in case of nonsuit.
For reasons stated, it is ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, avoided, annulled, and reversed. It is further ordered, adjudged, and decreed that plaintiffs’ demand be rejected at their costs, and their injunction is dismissed, and that defendants’ demand for recognition of their lease to the extent before stated is granted. Whatever right the defendants may be entitled to for damages is reserved. With this reservation the demand of defendants for damages is dismissed. Appellees to pay costs of both court's.