252 So.2d 161 (1971)
HARTFORD FIRE INSURANCE COMPANY, Plaintiff-Appellee,
v.
ROGER WILSON, INC., et al., Defendants-Appellants.
No. 3516.
Court of Appeal of Louisiana, Third Circuit.
August 20, 1971.
Dissenting Opinion August 27, 1971.
Rehearings Denied September 23, 1971.
Writs Refused October 28, 1971.
*162 Blanchard, Walker, O'Quin & Roberts by Wilton H. Williams, Jr., Shreveport, for defendants-appellants.
Mayer & Smith by M. Caldwell Roberts, Shreveport, for plaintiff-appellee.
Bethard & Bethard by Henry W. Bethard, III, Coushatta, for defendant-appellee-appellant.
Before CULPEPPER, MILLER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
On October 26, 1968, after working hours, a 1967 Caterpillar tractor, Model D7E, was damaged by fire while parked on land owned by Boise-Cascade, and being cleared by Jesse Standifer, near Marthaville, Louisiana. The tractor was owned by Roger Wilson, Inc. and was covered for fire loss by two policies of insurance, one issued by Hartford Fire Insurance Company and the other by Bituminous Casualty Corporation. The policy limits of each were $30,000.00, and the latter contained a clause excluding coverage while the machine was "leased, loaned or rented to others".
The fact of two separate insurance policies being in effect resulted from error on the part of Roger Wilson when he bought out the partnership of Wilson & Tate and incorporated as Roger Wilson, Inc. He apparently was unaware that there was coverage on the tractor by the Hartford and so he secured such coverage from Bituminous. In any event, it is undisputed that both policies were in effect at the time of the fire.
On November 8, 1968 Wilson filed a Proof of Loss with Bituminous and on June 19, 1969 it filed one with Hartford. The former refused to pay on the grounds that the tractor was leased to Standifer at the time of the fire, thus coming within the exclusionary clause above referred to. The latter, while it admitted to some liability, refused to pay on the grounds that the amount claimed was excessive and that in any event it would only be liable for half of the loss because of the existence of the Bituminous policy.
*163 In the meantime the tractor was repaired by Boyce Machinery Corporation at a cost of $22,453.08 and the bill tendered to Bituminous for payment. The tractor was returned to Wilson.
Hartford based its contention that the statement from Boyce was excessive on an appraisal made by one John McClain, of Southern Marine & Heavy Equipment Appraisers, Inc., which estimated the damage to the tractor to have been only in the amount of $19,401.43. McClain, however, was neither tendered nor qualified as an expert and he had no first-hand knowledge of what repairs were necessary or effected. Rather, his testimony which was objected to as being hearsay, was based strictly on his examination of the statement prepared by Boyce and his conversation with a foreman at Boyce. It was therefore hearsay testimony, should not have been allowed by the trial judge, and is disregarded by this court.
On October 24, 1969 Hartford initiated the instant litigation by filing a suit for Declaratory Judgment, and in the alternative for damages, against Wilson, Bituminous and Standifer. In the petition it admitted indebtedness to Wilson in the sum of $720.22 alleged to be 50-per cent of the above referred to appraisal by McClain, less $250.00 deductible, and it deposited that sum into the Registry of the Court. By an amended petition filed on November 6, 1969 the amount deposited by Hartford was corrected to $9,450.72. Wilson reconvened against Hartford and Bituminous for penalties and attorney fees alleging their arbitrary and capricious failure to pay.
Following a trial on the merits the district court rendered judgment in favor of Wilson and against Hartford and Bituminous casting each of the latter for $11,101.54 representing one-half of $22,453.08 less the deductible $250.00, with legal interest from date of judicial demand. All other demands of all parties were rejected. Bituminous and Wilson appealed that judgment to this court and Hartford answered the appeal of Wilson. Bituminous specifies as error the finding of the trial court of liability on its part, arguing that because the tractor was leased to Standifer at the time of the fire, its coverage was not in effect. Wilson seeks penalties and attorney fees as well as one-half of the premium paid to each insurer, and alleges error in the trial court's failure to award it these items. Hartford approves the district court's judgment except insofar as it cast it for legal interest on the full $11,101.54, and argues that such interest should not be due on that portion of the judgment which it had previously deposited in the Registry of the Court.
Additionally both Bituminous and Hartford filed motions to remand the case to the district court. Bituminous alleges in its motion that after the district court rendered its judgment in the instant case and the appeals were taken, a judgment was rendered against it in the Nineteenth Judicial District Court in and for the Parish of East Baton Rouge, Louisiana, in a case entitled Boyce Machinery Corporation v. Bituminous Casualty Corporation, No. 135,852 on the docket of Division "D" of that court. Bituminous further alleges that the said judgment cast it for the full amount of the repairs to Wilson's tractor, $22,453.08, plus interest and costs and that it has paid the judgment in full. It is the contention of Bituminous that our failure to remand this case for the purpose of introducing evidence of the Baton Rouge judgment would result in the unjust enrichment of Wilson at its expense. Hartford joined in the reasons for remanding advanced by Bituminous and additionally sought remand for the purpose of having its aforementioned tender returned to it.
We heard arguments on both the motions to remand and the appeals on the merits simultaneously, and insofar as is possible, decide both herein. First we discuss the motions to remand.
It is apparent that there is merit in mover's assertion that our failure to grant *164 their motions would result in the unjust enrichment of Wilson. If the allegations of Bituminous are correct, Wilson would not only have his repaired tractor but also a sum equal to the price of the repairs. If Hartford's contentions are correct, Wilson would also be able to withdraw the amount that Hartford deposited in the registry of the court in addition to having its judgment. Clearly equity requires that we remand the case to the District Court for the entry of an order directing the Clerk of Court to return the tender previously made by Hartford and to allow the introduction of evidence of the Baton Rouge suit and its consequences, and we are authorized to do so by Louisiana Code of Civil Procedure, Art. 2164. Mathes v. Gaines, 19 La.App. 692, 127 So. 408.
However, in the interest of judicial economy, we shall dispose herein of those issues raised by the appeals which do not require further evidence for their proper adjudication.
We enter our discussion of whether the tractor was leased at the time of the fire under the guidance of the jurisprudence of this state to the effect that the provisions of insurance policies are to be strongly construed against the insurer, that a liberal interpretation of clauses exempting or limiting liability is not permitted, and that an insurer seeking to avoid liability under an exclusionary clause has the burden of proof. Givens v. Southern Farm Bureau Casualty Ins. Co., La.App., 197 So.2d 380, writ refused, 250 La. 902, 199 So.2d 916; Rachal v. Union National Life Insurance Co., La.App., 184 So.2d 775, writ refused, 249 La. 380, 186 So.2d 628.
The Civil Code of this state sets out the conditions under which a lease comes into existence in a number of its articles, some of which are pertinent here. They are as follows:
Art. 2670. "To the contract of lease, as to that of sale, three things are absolutely necessary, to wit: the thing, the price, and the consent."
Art. 2671. "The price should be certain and determinate, and should consist of money. However, it may consist in a certain quantity of commodities, or even in a portion of the fruits yielded by the thing leased."
Art. 2673. "There are two species of contracts of lease, to wit:
1. The letting out of things.
2. The letting out of labor or industry."
Art. 2674. "To let out a thing is a contract by which one of the parties binds himself to grant to the other the enjoyment of a thing during a certain time, for a certain stipulated price which the other binds himself to pay him."
Art. 2692. "The lessor is bound from the very nature of the contract, and without any clause to that effect:
1. To deliver the thing leased to the lessee.
2. To maintain the thing in a condition such as to serve for the use for which it is hired.
3. To cause the lessee to be in a peaceable possession of the thing during the continuance of the lease."
The evidence in this regard is confused and often contradictory but certain facts can be discerned therefrom. Standifer was under contract to Boise Cascade to clear a certain tract of land owned by the latter. In the course of his operation it became necessary to employ equipment which he lacked but which Wilson possessed, including the tractor in question, so he approached Wilson with a view toward obtaining the use of the equipment. At first a written lease of the equipment was contemplated but because they were unable to agree to the rigid terms imposed thereby, it was discharded. Instead Standifer and Wilson entered into an oral agreement whereby Wilson would be paid by the hour only for the number of hours that the *165 equipment was actually used. The arrangement could be terminated at any time by either party.
Wilson testified that if he supplied the operator, fuel, and supporting equipment, i. e., a pick-up truck, etc. he was to receive $20.00 per hour. If Standifer supplied these, Wilson would receive $15.00 per hour. He said that, at times, he would supply the operator, etc., and at other times Standifer would do so.
Standifer testified that he always paid Wilson $15.00 an hour, that the machines, men "and everything else" were Wilson's, and that he "* * * was paying him [Wilson] to do the job". He said that he paid the tractor operator only once, the day of the fire, and that he did so only because Wilson was out of town and the man wanted his money. Further he said that he deducted the amount paid that operator from what he later paid Wilson. Standifer admitted that it was he who had hired the aforementioned operator. He said he did so because the operator had worked for Wilson and had been on the latter's payroll and covered by his compensation insurance, and he therefore did not think that Wilson would object.
The only other person who testified in this regard was the operator in question. He confirmed that Standifer had hired him one week before the fire and that he had paid him on the day of the fire. He also made the point that the fire occurred when the tractor was at rest, at the end of the day, but said that he had stopped working a little early that day because the tractor was overheating.
Although the trial judge did not favor us with any reasons for his judgment, we can safely assume that he concluded that the tractor was not in fact leased to Standifer. In view of the foregoing law and evidence we cannot say that such a conclusion is manifestly erroneous. In addition we note the failure of Bituminous to appeal the Baton Rouge judgment forming the basis of its motion to remand. It appears to us that in allowing that judgment to become final Bituminous, at least tacitly, conceded that the tractor was not leased to Standifer. Accordingly we concur in the trial court's conclusion and need not reach the other points in this connection made by Hartford.
Hartford correctly points out that the trial court erred in deducting the sum of $250.00 from the amount due Wilson, as the deductible portion of its policy does not apply to loss caused by fire. Its contention that legal interest should be allowed only on that portion of the judgment against it exceeding the amount that it previously tendered, is however, without merit. Wilson could not safely have withdrawn the amount deposited by Hartford in the Registry of the Court as the deposit was not made specifically without prejudice. Furthermore, the ultimate judgment in favor of Wilson and against Hartford was considerably in excess of the amount deposited. Under these circumstances Hartford must pay legal interest on the entire amount for which it is eventually cast. Durham v. Pan American Fire & Casualty Company, La. App., 141 So.2d 108.
Wilson's demand for a return of one-half of the premium paid to each of the insurance companies is not impressive. It received benefits from each company in the form of excess coverage over and above the policy limits. Thus, had the damage to the tractor exceeded the limits provided for in the policies of $30,000.00, the excess could have been recovered up to a maximum of $60,000.00. Further, the existence of two policies was not due to any fault of the insurance companies, but rather to an oversight on the part of Wilson. This demand is therefore rejected.
Our reading of this record as well as the exhibits contained in Bituminous' Motion to Remand, induces us to opine, however, that penalties and attorney fees may very well be due Wilson from either or both of the insurance companies under La.R.S. 22:658. We think it desirable that further *166 consideration be given to this issue by the District Court when all of the evidence is before it.
For the above and foregoing reasons, it is ordered, adjudged, and decreed that the judgment herein rendered be annulled, avoided, and reversed, and that this matter be remanded to the District Court for further proceedings not inconsistent with the views herein expressed. Costs of this appeal to be assessed against Bituminous and Hartford equally, and all other costs to await final determination of this case.
Remanded.
CULPEPPER, Judge (dissenting in part).
I respectfully dissent from that portion of the majority decision which finds coverage under the Bituminous policy.
The majority concludes: (1) The tractor which burned was not under lease and therefore was not excluded from coverage under the Bituminous policy. (2) Additionally, the failure of Bituminous to appeal from the judgment rendered in the Baton Rouge case constitutes acquiescence that its policy covered the loss. I cannot agree with either of these conclusions.
It is difficult to determine from the majority decision the reason for finding there was no lease. Since there is little, if any, dispute as to the relevant facts, I must assume the majority has found there was no lease because, as a matter of law, there was no "certain time" for its duration within the meaning of Civil Code Article 2674. It is my view that a lease need not be for a certain period of time, such as a week, month, year, etc. A lease which can be terminated at the will of either party, such as the one in the present case, is valid under Louisiana law.
Briefly stated, the relevant facts are that Wilson agreed to furnish Standifer the use of the tractor at a price of $20 per hour if Wilson furnished the operator, and $15 per hour if Standifer furnished the operator. There was no certain period of time for the duration of the lease. Either the lessor or the lessee had the right to terminate the agreement.
Standifer, who classified himself as a "small-time operator", actually drove the tractor himself much of the time, and during these periods he paid a rental of $15 an hour. During the period when Wilson furnished the operator, the rental paid was $20 an hour.
During the week when the tractor burned it was operated by James D. Pleasant, Jr., who was an employee of Standifer. There is absolutely no contradiction to the testimony that Standifer hired and paid Pleasant, who worked from Tuesday through Saturday of the week in question. The rental paid during this week was $15 an hour.
LSA-C.C. Article 2670 states that to the contract of lease three things are absolutely necessary, to wit: "The thing, the price, and the consent." In the present case the thing was the tractor, the price was the agreed hourly rental and, of course, there was mutual consent to the agreement.
LSA-C.C. Article 2674 states that the lease of a thing "is a contract by which one of the parties binds himself to grant to the other the enjoyment of a thing during a certain time." During those periods of time when Wilson furnished the operator, the tractor was under his control, and, hence, its "enjoyment" was not granted to Standifer and there was no lease. However, during those periods of time when Standifer drove the tractor himself or hired his own operator, he had the "enjoyment" of the tractor and there was a lease. It is not disputed that during the week the tractor burned, it was operated by Standifer's employee.
The principal argument made by Hartford and Wilson is that there was no lease since the enjoyment of the tractor was not let for "a certain time", within the meaning *167 of LSA-C.C. Article 2674. The source of this article is Code Napoleon of 1804, Article 1709, which reads the same. Planiol, Volume 2, No. 1669, explains that the purpose of the requirement that a lease be for "a certain time" is to prohibit leases in perpetuity, which had developed in feudal states during the Middle Ages. Laws passed during the first years of the French Revolution limited the duration of leases to 99 years. However, the Code Napoleon of 1804 makes only the vague limitation that leases shall be during "a certain time", and the redactors of our Civil Code used the same language. Nevertheless, the purpose of the limitation is to prohibit leases in perpetuity. The legislative intent was not to require that leases be for a certain period of time, such as a week, month, year, etc.
Other articles of our Civil Code clearly contemplate that a lease is valid even though no time is specified. For instance, Article 2685 provides that if a house is rented "without fixing its duration, the lease shall be considered to have been made by the month." Article 2687 provides "The lease of a predial estate, when the time has not been specified, is presumed to be for one year, * * *." I find no similar article establishing the presumed duration of the lease of a movable, where no time is specified, and hence the duration must be determined according to the intent of the parties. In the present case the intent of the parties is clear. The duration of the lease was at the will of either party.
LSA-C.C. Article 2036 states "An obligation may also be made, by consent of the parties, to depend on the will of the obligee for its duration. Thus a lease may be made during the will of the lessor, * *." This article on its face clearly contemplates a lease which can be terminated at the will of the parties.
Our jurisprudence also makes this clear. For instance, in Busch-Everett Company v. Vivian Oil Company, 128 La. 886, 55 So. 564, a lease provided that it would continue in force as long as the wells produced. The court held:
"That was a condition, which, it may be, plaintiffs could have terminated by obtaining a judicial order to that effect.
"But a contract of lease (and in this respect we consider the contract one of lease) may be entirely legal without a term, or a term may be so indefinite that only the court can determine its date."
Chambers v. Vega, 18 La.App. 736, 137 So. 879 (Orl.La.App.1931) involved facts very similar to those in the present case. An automobile battery was leased for a price of 25¢ per day until the battery was returned by the lessee or its return was demanded by the lessor. The court held the contract was a lease.
In the business world of today, it is customary to lease movables for a term depending on the will of the parties. Automobiles and a large variety of commonly used articles are leased under such agreements. This type of lease has great social utility and should be recognized as valid.
The majority decision cites cases holding that exclusionary clauses are strongly construed against the insurer, and the insurer has the burden of proving the facts relied on. In the present case there is no issue as to the construction of the exclusionary clause. It is clear and free of ambiguity. If the tractor was under lease at the time of the fire, coverage is excluded. Furthermore, there is no dispute as to the relevant facts found by the majority. Hence, the cited cases have no application.
The obvious rationale of the exclusionary clause is that a lessee will not maintain and preserve the tractor as well as the owner. The insurer had a right to place the clause in its policy and the courts must enforce the agreement as written.
The second reason given as a basis for the majority decision is that Bituminous failed to appeal from the judgment in the *168 Baton Rouge case. The argument here appears to be that by its actions in the Baton Rouge litigation Bituminous has conceded coverage under its policy and is therefore judicially estopped to deny coverage in the present litigation in Natchitoches Parish. I cannot agree.
There is nothing whatever in the record before us to show what the Baton Rouge case involved. The only thing we know about that case is revealed by the motions filed by both Bituminous and Hartford in this court of appeal, asking for a remand of this matter to the district court, and the opposition to that motion filed by Wilson. From these motions, and the opposition thereto, it appears that the sole issue in the Baton Rouge case was the liability of Bituminous under a contract which it made with Boyce Machinery Corporation to repair the tractor. Coverage of the fire loss under the Bituminous policy was not an issue. It also appears that Bituminous lost the case, did not appeal, but, instead, paid the judgment in the sum of approximately $22,453, representing the cost of repairing the tractor.
The equitable doctrines of acquiescence and estoppel apply where a person, by his representations or admissions, induces another to believe that certain facts exist, and the other rightfully relies upon these facts to his prejudice, Pittman Construction Company v. Housing Authority of New Orleans, 248 La. 471, 179 So.2d 900; American Bank & Trust Company v. Trinity Universal Insurance Company, 251 La. 445, 205 So.2d 35 (1967). I consider it very harsh to apply the doctrine of estoppel or acquiescence where we don't have the pleadings, transcript or judgments from the Baton Rouge case before us, and actually do not know what that litigation involved. However, even if we assume the facts stated in the motions to remand and the opposition, which are that the Baton Rouge case involved the contract for the repair of the tractor and that Bituminous lost the case and paid the judgment, I cannot see how the equitable doctrine of acquiescence applies to the present matter.
An essential element of estoppel is prejudice. Wilson was not prejudiced in any way in the present case by the failure of Bituminous to appeal the Baton Rouge judgment. The majority decision recognizes that Wilson is entitled to recover only the repair of his tractor, and that he is not entitled to be unjustly enriched by having his tractor repaired and in addition recovering $22,454. I certainly agree with this conclusion. If Wilson is entitled to no more than the repair of his tractor, he has already received this and cannot possibly be prejudiced in the present case by the failure of Bituminous to appeal the Baton Rouge judgment.
Hartford has joined in the motion to remand and does not urge estoppel or acquiescence. However, even if such an argument were made by Hartford, it would have no merit. The fact that Bituminous chose not to appeal the Baton Rouge judgment did not in any way cause Hartford to change its position in the present litigation.
Finally, I cannot agree with the suggestion in the majority decision that further consideration should be given to the issue of penalties. It is my view that the trial judge was correct in denying penalties and attorney's fees. As to Bituminous, of course I think its policy does not cover the loss, and hence it was justified in denying liability. As to Hartford, this case involved very unusual circumstances. It was not discovered that Hartford carried a policy on the tractor until about six months after it had been repaired. As a result, Hartford had difficulty estimating the cost of repairs and attempting to negotiate a settlement. Finally, it filed the present suit for declaratory judgment and deposited one-half of its estimate of repairs in the registry of the court. I think this was reasonable.
For the reasons assigned, I respectfully dissent.