259 So.2d 669 (1972)
Lawrence J. BOUDREAUX, Jr.
v.
ELITE HOMES, INC.
No. 4649.
Court of Appeal of Louisiana, Fourth Circuit.
March 21, 1972.
Rehearing Denied April 4, 1972.
Writ Refused May 25, 1972.
*670 Morphy & Freeman, A. D. Freeman, Jr., New Orleans, for defendant, reconvenor and appellant, Elite Homes, Inc., and for intervenor appellant, Bill Dillon.
Birdsall, Alvarez & Rodriquez, R. D. Alvarez, New Orleans, for plaintiff, defendant in reconvention and appellee, Lawrence J. Boudreaux, Jr.
Before LEMMON, GULOTTA and BOUTALL, JJ.
BOUTALL, Judge.
This a suit by a vendee for return of a $500.00 deposit on a contract to purchase real estate with a house to be built thereon by vendor, and also for an additional $500.00 and attorney's fees as stipulated damages for vendor's failure to perform under the terms of the contract. Plaintiff alleges arbitrary refusal to perform by the vendor, who has reconvened for $123.84 for advertising expenses, $180.00 in interest paid on the property while holding it for sale, and $50.00 for drafting plan changes for the house, or a total of $353.84. Vendor alleges plaintiff breached the contract by failing and refusing to make application for the loan with which to purchase the property under the contract.
The sales agent involved, Bill Dillon, has intervened against the plaintiff for his commission of six (6%) percent of the purchase price, or $1242.00, alleging also the refusal of plaintiff to apply for the loan under the contract. By the terms of the contract, such an act by the vendee will render him liable for payment of this commission.
The court below, after trial, found no preponderance of evidence in favor of either party in view of the confused and conflicting testimony given. Judgment was rendered (1) for plaintiff Boudreaux, ordering the return to him of the $500.00 deposit; (2) against Boudreaux, as defendant in reconvention, and in favor of Elite for $173.00, the costs to them of advertising and plan modifications; and (3) against the intervenor, Dillon, dismissing the intervention. From this, Elite, defendant *671 and plaintiff in reconvention, and, Dillon, intervenor appeal.
Appellant-defendant Elite asks for affirmance of that part of the judgment in its favor of $173.00 and reversal of that part ordering return of the $500.00 deposit; intervenor asks for reinstatement of his intervention and a judgment in his favor for the $1242.00 commission. Plaintiff-appellee has not answered the appeal; therefore, we cannot consider the question of an increase in his award, nor of a decrease in the award to Elite of $173.00 for its out-of-pocket costs.
The trial judge, in his reasons for judgment, stated:
"It appears that the original agreement was changed on at least two occasions. Each time the change contemplated a price and thing being substituted for what was originally agreed upon. The purchase of the new home by plaintiff was predicated upon the sale of his home on Butterfly Terrace [sicButterfly Circle].
The testimony was at great variance. Plaintiff contends that defendants did not comply with their agreement and failed to sell his home. * * *
The defendants state that they exerted every effort to sell plaintiff's home and had actually found a buyer who was going to take title to the property and place the down payment in escrow with defendant. The prospective purchaser was an employee of defendant-real estate company and the Court understands his agreement with his employer as one of the credit advance against commissions to be used as a down payment on the proposed purchase. Involved in these proceedings is an intervention by a real estate salesman who worked on this contract and claims his commission due.
The Court is at a loss to determine a preponderance of evidence in favor of either party. The negotiations and contractual relationships broke down into a bickering, accusatory melee. * * *"
The three contracts introduced by the plaintiff are in succession to each other, both parties intending each previous contract to be canceled thereby. As appears from the record, plaintiff wanted to lower the price of the original contract, so the second contract was effected with a smaller house and a different lot on the same street (Euclid Street). The third contract was for the same house, but on a third lot on a different street (Emerson Street). Each contract had a lesser price than its predecessor. The trial judge held each of these to be a novation of the previous contract.
The difficulty arose because of a suspensive condition which was included in the first two contracts, to the effect that Elite was to sell plaintiff's present dwelling on Butterfly Circle before the contract took effect. The third contract contained no such condition on its face.
For some time after the second contract was made, until January 1965, no buyer had appeared for the Butterfly Circle home. Mr. Sid Montecino, a sales agent employed by Elite, offered to buy this home and signed an agreement to purchase on January 18, 1965, the same day as the third contract between Boudreaux and Elite was signed, for sale of the Emerson Street property. There is no doubt but that the judge below considered both of these contracts together. Therefore, the third contract for sale of the Emerson Street property must be read with the agreement to sell, made the same day, for the Butterfly Circle home. These two contracts, taken together, were found to be ambiguous in their relationship. Therefore, parol evidence was properly allowed to show how the entire transaction was composed.
The testimony of the plaintiff was that the contract to buy the Emerson Street property was predicated upon his *672 sale of the Butterfly Circle home made the same day. This was corroborated by Mrs. Boudreaux and also admitted by the testimony of the intervenor, Bill Dillon, the prospective buyer, Sid Montecino, and Elite's manager, Dill Asher. This is sufficient to establish a suspensive condition in the third agreement between Elite and Boudreaux, which then depended upon sale of the other home.
Shortly thereafter, Boudreaux and Elite attempted to draw up a loan application for the purchase of the Emerson Street property. Boudreaux, by his testimony and that of his wife, uncontradicted by Elite, started to prepare the necessary papers. Boudreaux testified that he signed them but this is contradicted by other testimony. All admit that Boudreaux later refused to complete the papers in order to obtain the loan.
The reason for this is clearly shown by the testimony of both Boudreaux and Montecino, the prospective buyer. Montecino could not come up with the $1500.00 cash down payment, needed by Boudreaux to buy Elite's property. The reason why he could not pay, as testified to by Montecino, is because the down payment was to come from a split with Dillon of Dillon's commission from Elite for the sale of the Emerson Street property to Boudreaux. Even though Montecino later, in February, tried to again purchase the home for a reduced down payment of $1100.00, he could not find the cash to pay Boudreaux because he "was not granted a loan". Of course, Boudreaux by this time, unable to get the cash down payment, unsure his house would be sold to Montecino after all, declined to put through his loan application. This was not a breach on his part, since the suspensive condition of sale of the Butterfly Circle home had not occurred, and Boudreaux had as yet no obligations under his contract with Elite. (LSA-C.C. Arts. 2021, 2038 and 2043) Elite had, before then, stopped offering the Butterfly Circle home for sale and subsequently sold the Emerson Street property to one Al Thomas, who testified he purchased it from Elite through Bill Dillon as agent, who then collected a commission on the sale from Elite. When this sale occurred, the contract between Elite and Boudreaux, as yet not perfected by the suspensive condition of sale of Boudreaux's Butterfly Circle home, became null. (C.C. Art. 2038.) See Guichard v. Greenup, 259 So.2d 93 (La.App. 4th Cir., 1972) and citations therein. Elite was then obligated to return the $500.00 deposit to the vendee, and since the contract was a nullity, there can be no commission due the agent Dillon. We feel that the trial judge's decision is amply supported by the evidence and will not be disturbed on appeal. The judgment is affirmed in all respects; all costs of this appeal are to be borne by appellants.
Affirmed.