381 So.2d 926 (1980)
Freddie POOLE, Plaintiff-Appellant,
v.
WINWELL, INC., et al., Defendants-Appellees.
No. 7484.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1980.
George Griffing, Jonesville, for plaintiff-appellant.
Smith, Taliaferro, Seibert, Boothe & Purvis by Leo Boothe, Jonesville, for defendants-appellees.
*927 Before CULPEPPER, GUIDRY and DOUCET, JJ.
GUIDRY, Judge.
Plaintiff, Freddie Poole, owner of a forty-three acre tract of land in Catahoula Parish, seeks the cancellation of two surface leases affecting 5.5 acres of said tract and/or damages for the overflow of salt water from the lessees' oil collecting facility onto both leased and adjacent non-leased portions of the tract. Made defendants in this suit are the lessees who own undivided interests in the two surface leases: Winwell, Inc., C. S. McCain, Jr., and the Succession of Douglas Whitaker. The defendant-lessees acquired the two surface leases from plaintiff's ancestor in title, Rex G. Poole: one on December 23, 1962, covering 2.5 acres; and the other on August 21, 1963, covering 3 acres contiguous with the other leased premises. Defendant's objective in leasing the property was to establish and maintain an oil and gas gathering facility thereon and this is specifically permitted under the terms of the leases. The term of said leases is so long as there is production from wells located in Sections 9, 16 or 41, Township 9 North, Range 6 EAst, Catahoula Parish, Louisiana. Winwell, Inc. operates the oil collection site on said leased property which consists of a tank battery, a salt water disposal well, and a salt water disposal pit. The oil currently collected is pumped from wells on land other than plaintiff's, but located within the above mentioned sections.
Plaintiff alleges that defendants breached their engagements under the August 21, 1963 lease agreement by allowing salt water and/or oil to escape and damage his property. Further, plaintiff asserts that both lease instruments are null and void because they contain potestative conditions, are indefinite as to duration, and are unsupported by serious or adequate consideration. Defendants denied plaintiff's allegations and filed an exception of prescription asserting that all damages alleged in plaintiff's petition, if any, occurred more than one year prior to the filing of the suit. The trial judge sustained the exception of prescription of one year as to plaintiff's damage claim. The trial court also held the leases to be valid and denied plaintiff's demand for their cancellation. From this judgment plaintiff appeals.
The primary issues for our consideration are whether plaintiff's claim for damages is barred by the liberative prescription of one year and whether the trial court erred in holding the leases valid and denying their dissolution.

PRESCRIPTION
In order to determine whether in the instant case plaintiff's action for damages is barred by a prescriptive period of one year, it is necessary to examine the grounds on which his action is based. The nature of the obligation breached determines the applicable prescriptive period. LSA-C.C. Art. 3531; Dean v. Hercules, Incorporated, 328 So.2d 69 (La.1976).
The decision of the trial court apparently was founded on the conclusion that plaintiff's petition sounded in tort and since all damage[1] to the property occurred more than one year prior to the institution of suit[2], the action had prescribed under Civil Code Article 3536.
Our examination of the petition convinces us that the trial court erred in considering the action as one in tort. We conclude that the suit is one sounding in *928 contract and that the one year prescriptive period of Article 3536 does not apply.[3]
In Federal Insurance Co. v. Insurance Co. of No. Amer., 262 La. 509, 263 So.2d 871 (1972), the Supreme Court reiterated established guidelines in determining the appropriate prescriptive period in circumstances as are found in the instant case:

"It has been recognized by this Court on numerous occasions that when a party has been damaged by the conduct of another arising out of a contractual relationship, the former may have two remedies, a suit in contract, or an action in tort, and that he may elect to recover his damages in either of the two actions. In such cases, the prescription applicable is determined by the character which plaintiff gives his pleadings and the form of his action. American Heating & Plumbing Co., Inc. v. West End Country Club, 171 La. 482, 131 So. 466 (1930); Kramer v. Freeman, 198 La. 244, 3 So.2d 609 (1941); LaFleur v. Brown, 223 La. 976, 67 So.2d 556 (1953); and Importsales, Inc. v. Lindeman, 231 La. 663, 92 So.2d 574 (1957)."

In plaintiff's petition, he cites in paragraph 9 a provision from the lease executed on August 21, 1963, which provides as follows:
"Lessee further agrees to keep these premises in good condition, and to conduct and operate its facilities thereupon in such a manner so as not to interfer (sic) with lessor's use and enjoyment of the adjoining property owned by him."
In paragraphs 10 and 11, plaintiff asserts that the defendants breached the above cited lease provision by allowing salt water and/or oil to escape causing damage to plaintiff's land which he particularly alleges as permanent damage suffered by the land, trees, and fences.
Although plaintiff did seek to argue the applicability of a continuing tort theory to the case, it is manifestly clear that the damages plaintiff seeks arise ex contractu, i. e., from the violation of the lease contract executed on August 21, 1963, as set forth in his petition. Accordingly, as plaintiff's claim is not barred by prescription of one year, we now consider the question of what damages are due.
Plaintiff alleges in his petition that his land was damaged in the amount of $15,000.00 because of the salt water and/or oil spill-over: $5,000.00 damage to leased premises; $10,000.00 damage to non-leased land. Testimony and evidence adduced at trial evidently convinced the trial judge, as we are likewise convinced, that plaintiff's land in fact was damaged by salt run-off caused by the oil collection operation conducted on the leased premises by defendants. The salt run-off left the property directly adjacent to the leased premises barren and unsuitable for the growth of vegetation or the grazing of animals. However, as the trial judge was of the opinion that plaintiff's claim for damages had prescribed, the trial court made no determination as to the extent of damage to plaintiff's property.
In determining an award for damages, we will consider only damage to the property that lies outside the leased premises. We do so because the lease is still ongoing, for reasons discussed infra, and the defendant-lessees have apparently made good faith efforts to keep the leased premises in good condition in light of the purpose for which it is employed. Defendant-lessees have filled in two of the original three salt water disposal pits and apparently intend to make further on-site rehabilitation efforts; therefore, the determination of damages to the leased property is inappropriate and, in any event, premature at this time.
Plaintiff utilizes the 37.5 acres outside of the leased premises by renting same for the grazing of livestock. As to plaintiff's property adjacent to the leased premises that was damaged, the evidence in the *929 record establishes this area to be 3.5 acres (out of a total of 9 acres damaged by the salt run-off). This damaged area is no longer suitable for the purposes plaintiff has been employing it. Although the damaged 3.5 acres retains some residual value, it has little or no rental or use value. Using the evidence adduced at trial as to the land's market value, based on comparable sales of land in the vicinity of plaintiff's tract, we find that the damage sustained by plaintiff amounts to the sum of $2,250.00, exclusive of the leased premises.

VALIDITY OF THE LEASES
Plaintiff attacks the validity of the two surface leases on three alleged grounds: (1) they lack a definite term; (2) they contain potestative conditions; and, (3) they are not supported by serious or adequate consideration. We find plaintiff's arguments against the validity of the leases to be without merit.
First, as to the term element of the leases, the December 23, 1962 lease contains the following provision:
"This lease shall continue in force and effect so long as oil, gas and other minerals are being produced from Sections 9, 16 and/or 41, Township 9 North, Range 6 East, Catahoula Parish, Louisiana."
The August 21, 1963 lease provides as follows:
"This lease shall be for a term of ten (10) years from this date or for so long as oil, gas, or other minerals are produced by this lessee or its assigns from the Rex G. Poole # 1 well, the Louisiana CentralInternational Paper wells number A1, A2, and A3, or any other oil or gas well produced by this lessee or its assigns in Sections 9, 16, or 41 of Township 9 North, Range 6 East, Catahoula Parish, Louisiana."
Plaintiff argues that the above cited term provisions provide for no "certain time" in contravention of the definition set forth in LSA-C.C. Article 2674, which provides:
"To let out a thing is a contract by which one of the parties binds himself to grant to the other the enjoyment of a thing during a certain time, for a certain stipulated price which the other binds himself to pay."
However, the origin of Article 2674 as reviewed in Judge Culpepper's dissent in Hartford Fire Insurance Co. v. Roger Wilson, Inc., 252 So.2d 161, (La.App.3rd Cir. 1971), writ denied, 259 La. 939, 253 So.2d 381, suggests a different conclusion:
". . . The source of this article is Code Napoleon of 1804, Article 1709, which reads the same. Planiol, Volume 2, No. 1669, explains that the purpose of the requirement that a lease be for "a certain time" is to prohibit leases is perpetuity, which had developed in feudal states during the Middle Ages. Laws passed during the first years of the French Revolution limited the duration of leases to 99 years. However, the Code Napoleon of 1804 makes only the vague limitation that leases shall be during "a certain time", and the redactors of our Civil Code used the same language. Nevertheless, the purpose of the limitation is to prohibit leases in perpetuity. The legislative intent was not to require that leases be for a certain period of time, such as a week, month, year, etc."
Our jurisprudence has confirmed this interpretation. In Busch-Everett Co. v. Vivian Oil Co., 128 La. 886, 55 So. 564 (1911), our Supreme Court upheld a lease with a production term similar to those in the instant case, holding that it is not necessary that the term of a lease be expressed in terms of time, for the lease may be stipulated to continue only during the continuation of a given condition. Accordingly, the term provisions of the leases involved in the instant suit are not at variance with codal requirements.
The term provisions of the leases, cited above, are also the bases for plaintiff's argument that the leases contain potestative conditions. Plaintiff argues that the term of the leases, conditioned on production, are purely potestative because the continuance of the lease depends on an event which is in the power of the defendants to bring about or hinder.
*930 The trial court held that the term provisions of the leases were not purely potestative, but simply potestative, thereby, affirming the use of such conditions as sanctioned by LSA-C.C. Article 2035. Although we agree with the trial court's conclusion that the term provisions are not purely potestative, we do not find Article 2035 applicable. The pertinent codal articles are as follows:
LSA-C.C. Article 2023:
"The casual condition is that which depends on chance, and is no way in the power either of the creditor or of the debtor."
LSA-C.C. Article 2024:
"The potestative condition is that which makes the execution of the agreement depend on an event which it is in the power of the one or the other of the contracting parties to bring about or to hinder."
LSA-C.C. Article 2025:
"A mixed condition is one that depends at the same time on the will of one of the parties and on the will of a third person, or on the will of one of the parties and also on a casual event."
LSA-C.C. Article 2034:
"Every obligation is null, that has been contracted, on a potestative condition, on the part of him who binds himself."
LSA-C.C. Article 2035:
"The last preceding article is limited to potestative conditions, which make the obligation depend solely on the exercise of the obligor's will; but if the condition be, that the obligor shall do or not do a certain act, although the doing or not doing of the act depends on the will of the obligor, yet the obligation depending on such condition, is not void."
LSA-C.C. Article 2036:
"An obligation may also be made, by consent of the parties, to depend on the will of the obligee for its duration. Thus a lease may be made during the will of the lessor, and a sale may be made conditioned to be void, if the vendor chooses to redeem the property sold."
Applying the definitions of the three types of conditions to the case at hand, it is clear that the provisions concerning the duration of the leases, being dependent on production, are mixed conditions as described in Article 2025. The production of oil does not depend solely on the will of the lessees as the wells may go dry or production may decrease to such a degree to make it economically impracticable to continue.
However, assuming arguendo, that the assailed lease provisions are purely potestative, i. e., the decision to produce or not produce being solely dependent on the defendant-lessees' will; nevertheless, they relate only to the duration of the lease. In such case they would be resolutory potestative conditions, which are specifically authorized under LSA-C.C. 2036. Long v. Foster & Associates, Inc., 242 La. 295, 136 So.2d 48 (1962). In Long, supra, the court stated:

". . . But conceding for the sake of argument (and for that purpose only) that the assailed cancellation clause was purely potestative in nature, nevertheless it related solely to the duration of the contract; and Revised Civil Code Article 2036 specifically recognizes the validity of an agreement when the duration thereof is left to the will of one of the parties.. . ."
Plaintiff's third argument, that the consideration paid for the lease is not serious and not in proportion to the value of the thing leased, is not supported by the record. Plaintiff's father, Rex G. Poole, was paid $575.00 in advance for the execution of the leases. Plaintiff failed to come forward with any evidence to show that the price paid by the lessees was not serious or not in proportion to the market rental value of the 5.5 acres either in 1962 and 1963 or in 1977. Quite to the contrary, defendant's expert, on the basis of conveyances executed in the immediate vicinity of plaintiff's property, shows that the $575.00 paid for the lease of plaintiff's 5.5 acres is not greatly disproportionate to prices paid for the sale of land in fee in 1963.

*931 DISSOLUTION
Finally, we consider whether the trial court abused its discretion in not dissolving the leases for the non-fulfillment by defendant-lessees of their engagement to not interfere with the lessor's use and enjoyment of the adjoining property owned by him.
Plaintiff seeks dissolution on the basis of LSA-C.C. Article 2729, which provides:
"The neglect of the lessor or lessee to fulfill his engagements, may also give cause for a dissolution of the lease, in the manner expressed concerning contracts in general, except that the judge can not order any delay of the dissolution."
The trial court concluded that the salt water overflow was not of such a severe nature so as to warrant cancellation. We agree. As we stated in Vidrine v. Morein, 360 So.2d 659 (La.App.3rd Cir. 1978):

". . . It is well settled that the right to dissolve a lease is subject to judicial control according to the circumstances. Housing Authority of the City of Lake Charles v. Minor, 355 So.2d 271 (La.App.3rd Cir. 1977, cert. denied). In the cited case, we stated: `. . . our courts, on the basis of equity, are vested with discretion under some circumstances to decline to grant a lessor cancellation of a lease although such right appears to be otherwise available to him.' . . ."

In the instant case, the salt water overflow was an unfortunate consequence of the operation conducted on the leased premises. It is inherent in the nature of oil production that a great quantity of salt water is also produced. Defendant-lessees have taken measures to prevent any further overflows by the drilling of a salt water disposal well and the addition of a salt water storage tank. We are of the opinion that plaintiff's rights have been sufficiently vindicated by the award of damages that we make today for plaintiff's loss.
For the reasons assigned, the judgment appealed from is affirmed in part, reversed in part and rendered to read as follows:
The exception of prescription filed by defendants is overruled and judgment is rendered in favor of plaintiff Freddie Poole and against the defendants, Winwell, Inc., C. S. McCain, Jr., and the Succession of Douglas Whitaker, in solido, condemning said defendants to pay unto plaintiff the sum of $2,250.00 with legal interest thereon from date of judicial demand until paid.
It is further ordered, adjudged and decreed that all of plaintiff's other demands are dismissed with prejudice.
All costs of these proceedings at the trial level and on appeal are to be borne one-half (½) by plaintiff and one-half (½) by defendants.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
NOTES
[1] The record indicates that the apparent cause of the damage is the result of the deepening of the salt water pits and pit overflow onto adjoining lands. In 1965, Winwell, Inc. deepened the pits with a dragline and the salt-saturated sand and silt from the pits was used to make a levee around the pits. Subsequent rain action or overflow from the salt water pits washed the salt from the levee and spilled over onto the surrounding area.
[2] Plaintiff filed suit September 7, 1977. From the testimony and evidence adduced, the trial judge concluded that the property damage had already occurred prior to the taking of an aerial photograph in 1972.
[3] The prescriptive period for an action arising ex contractu is 10 years as set forth in LSA-C.C. Article 3544; however, as defendant failed to plead the exception of prescription of 10 years, any issue pertaining thereto is not before this court.