CARTER, Judge.
This is a suit for damages arising out of alleged breaches of contract.
FACTS
Appellees, Mark and Elizabeth Lemke, owned a home in Denham Springs, Louisiana. In January, 1985, Gordon and Mary Amidon executed an agreement with the Lemkes to purchase the Lemke home. The purchase agreement contained the following conditions:
This is a Recorded lease Purchase to begin Feb. 1,1985 and end Feb. 1,1986— at which time purchaser will obtain 95% loan. Lease to be 550.00 per month.
During the course of the lease period, the Amidons no longer wished to purchase the Lemke home.
In January, 1986, Mary Amidon, a licensed real estate broker, procured another prospective purchaser. By agreement to purchase, dated January 27, 1986, Kyle D. and Delores S. Clevenger agreed to purchase the Lemke home. The purchase agreement contained the following conditions:
This sale is contigent (sic) upon sale of Purchaser home located at 5319 Charing Way, Baton Rouge, La. in 90 days (May 30th 1986). If home is not sold by this time purchaser will begin to lease home until their home does sale (sic).
The Clevengers did not sell their home by May 30, 1986. On or about June 12, 1986, the Clevengers sent the Lemkes $500.00 as rent for the month of June. After being informed by the Lemkes that the monthly rental was $550.00 a month, the Clevengers immediately sent another $50.00. In July of 1986, the Clevengers prepared and mailed a $550.00 check for the month of July. However, the check was never received by the Lemkes. The Clevengers did not send a replacement check and did not send the Lemkes any further payments.
On October 17, 1986, the Lemkes filed a suit for damages arising out of alleged breaches of contract, which was subsequently amended on December 12, 1986. In their petitions, the Lemkes alleged that, as a result of the failure of the Amidons and the Clevengers to purchase their home, they have sustained damages. In June, 1987, pursuant to a petition for executory process, the Lemke home was sold at sheriff’s sale. Various reconventional and third party demands were filed by the parties, including a reconventional demand by the Amidons for reimbursement for improvements made to the Lemke home.
After trial, the trial court rendered judgment in favor of the Lemkes and against the Amidons for $6,621.00 on the main demand and in favor of the Amidons and *565 against the Lemkes for $304.05 on the re-conventional demand. The trial court also rendered judgment in favor of the Lemkes and against the Clevengers for $5,500.00. The Amidons and the Clevengers were cast in solido for $3,750.00 in attorney’s fees. Thereafter, the Clevengers and the Lemkes both filed motions for new trial. By judgment dated November 30, 1987, the trial judge denied the Clevengers’ request for a new trial. In ruling on the Lemkes’ motion for new trial, the trial judge increased the award in favor of the Lemkes and against the Clevengers from $5,500.00 to $6,050.00. The trial judge also increased the in solido award for attorney’s fees from $3,750.00 to $7,500.00.
From this adverse judgment, the Cleven-gers appeal, questioning the validity of the lease and the award of attorney’s fees. The Lemkes answered the appeal requesting an increase in the award of attorney’s fees.[1]
VALIDITY OF THE LEASE
The Clevengers contend that the lease provision in the purchase agreement is invalid because the primary obligation to purchase the home was not enforceable. The Clevengers reason that because their home did not sell by May 30, 1986, they were not obligated to purchase the Lemke home under the express terms of the purchase agreement. The Clevengers then extend this analysis to the lease provision, arguing that the entire contract was not enforceable after May 30,1986. In support of these contentions, the Clevengers rely on Boudreaux v. Elite Homes, Inc., 259 So.2d 669 (La.App. 4th Cir.1972), writ denied, 261 La. 1061, 262 So.2d 42 (La.1972) and Shepard v. Calloway, 441 So.2d 488 (La.App. 2nd Cir.1983).
The Clevengers reliance on these cases, however, is clearly misplaced. Each of these cases is distinguishable from the facts of the instant case. In Boudreaux v. Elite Homes, Inc., supra, the contract to sell a home was contingent upon the sale of the purchaser’s home and was construed by the court to be a contract subject to a suspensive condition. Because the home, which was the object of the contract to sell, was sold to a third party before the purchaser’s home was sold, the contract to sell became null. In Shepard v. Calloway, supra, the contract to sell a home, contingent upon the purchaser obtaining financing, was determined to be a contract subject to a suspensive condition. The purchaser was not able to obtain financing, and the court determined that the contract to sell was ineffective because the condition did not occur.
While we agree, as did the trial judge, that the Clevengers were not obligated to purchase the Lemke home after May 30, 1986, because the purchase agreement specifically conditioned the sale upon the sale of the Clevengers home on Charing Way, the cases cited by the Clevengers do not support their contention that the lease provision was likewise unenforceable. Neither case cited by the Clevengers involved lease provisions contained in a purchase agreement.
The next inquiry is whether a valid lease existed. The Clevengers contend that the lease provision contained in the purchase agreement was never intended to be a separately enforced lease. The Cle-vengers further contend that any lease would be invalid because the contract failed to set forth a price and a term. The Cle-vengers, alternatively, contend that if the lease is enforceable, the lease was a month-to-month lease.
A lease is a contract by which one party (the lessor) gives to another the enjoyment of a thing, and the other (the lessee) agrees to pay a fixed price for that right. LSA-C. C. art. 2669; Terra Development Corporation v. Southland Dragway, Inc., 442 So.2d 587 (La.App. 1st Cir.1983), writ denied, 444 So.2d 1225 (La.1984). There are three requisite elements to a contract of lease, namely the thing, the price, and the consent. LSA-C.C. art. 2670; Acadiana *566 Bank v. Foreman, 352 So.2d 674 (La.1977); Thompson v. Grantham, 489 So.2d 414 (La.App. 3rd Cir.1986), writs denied, 494 So.2d 1178,1181 (La.1986). Leases may be made either by written or verbal contract. LSA-C.C. art. 2683; State Block, Inc. v. Poche, 444 So.2d 680 (La.App. 5th Cir.1984). The duration and the conditions of leases are generally regulated by contract or by mutual consent. LSA-C.C. art. 2684; State Block, Inc. v. Poche, supra.
The contract between parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. Bailey v. Franks Petroleum, Inc., 479 So.2d 563 (La.App. 1st Cir.1985); Rebstock v. Birthright Oil & Gas Co., 406 So.2d 636 (La.App. 1st Cir.1981), writ denied, 407 So.2d 742 (La.1981). This intent is to be determined by the words of the contract when they are clear, explicit, and lead to no absurd consequences. LSA-C.C. art. 2046; Thomas v. Knight, 457 So.2d 1207 (La.App. 1st Cir.1984); Campesi v. Margaret Plantation, 417 So.2d 1265 (La.App. 1st Cir.1982), writ denied, 422 So.2d 163 (La.1982). This rule is also applicable to contracts of lease. Thomas v. Knight, supra; Brignac v. Boisdore, 272 So.2d 463 (La.App. 4th Cir.1973), affirmed, 288 So.2d 31 (La.1973); Dikert v. Ruiz, 231 So.2d 633 (La.App. 4th Cir.1970). The meaning and intent of the parties to the written contract in such cases must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. LSA-C.C. art. 1848; Tauzin v. Claitor, 417 So.2d 1304 (La.App. 1st Cir.1982), writs denied, 422 So.2d 423 (La.1982). However, when the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, or fraud is alleged, parol evidence is admissible to clarify the ambiguity, show the intention of the parties, or prove fraud. Dixie Campers, Inc. v. Vesely Company, 398 So.2d 1087 (La.1981). Additionally, where a lease is silent on a particular issue and the surrounding circumstances are ambiguous with respect to that issue, this ambiguity should be interpreted against the lessor and in favor of the lessee. Tullier v. Tanson Enterprises, Inc., 367 So.2d 773 (La.1979); Bailey v. Franks Petroleum, Inc., supra; Bunch v. Heck, 440 So.2d 820 (La.App. 1st Cir.1983), writ denied, 444 So.2d 1219 (La.1984).
In the instant case, the portion of the agreement in question is as follows:
This sale is contigent (sic) upon sale of Purchaser home located at 5319 Charing Way, Baton Rouge, La. in 90 days (May 30th 1986). If home is not sold by this time purchaser will begin to lease home until their home does sale (sic).
The Clevengers argue that the above cited provision does not provide a certain time nor does it set forth a stipulated price in contravention of LSA-C.C. art. 2674.[2]
With regard to the price, the trial judge determined that although price was not a part of the January 27,1986, written agreement, there was an oral agreement as to price between the Lemkes, Amidons, and Clevengers. The testimony and documentary evidence indicates that the Clevengers paid a total of $550.00 per month to the Lemkes in June and July of 1986. Therefore, we cannot say that the trial judge erred in determining that the parties agreed on the price.
With regard to the lease term, the origin of LSA-C.C. art. 2674 as discussed in Poole v. Winwell, Inc., 381 So.2d 926 (La.App. 3rd Cir.1980) reveals that the source of this article is Code Napoleon of 1804, Article 1709, which reads the same. Planiol, Volume 2, No. 1669, explains that the purpose of the requirement that a lease be for “a certain time” is to prohibit leases in perpetuity, which had developed in feudal states during the Middle Ages. Laws passed during the first years of the French Revolution limited the duration of leases to 99 years. However, the Code Napoleon of *567 1804 makes only the vague limitation that leases shall be during “a certain time,” and the redactors of our Civil Code used the same language. Nevertheless, the purpose of the limitation is to prohibit leases in perpetuity. The legislative intent was not to require that leases be for a certain period of time, such as a week, month, year, etc. The lease provision in the instant case is somewhat similar to those cases involving oil, gas, and mineral leases wherein the lease is effective so long as oil, gas, and other minerals are produced. It is not necessary that a lease be expressed in terms of time, and the lease may be stipulated to continue only during the continuation of a given condition. See Busch-Everett Co. v. Vivian Oil Co., 128 La. 886, 55 So. 564 (1911). Additionally, even though the lease term is uncertain, it is determinable because it is pegged to the future sale of the house. This does not invalidate the obligation. See LSA-C.C. art. 1778 specifically and LSA-C.C. art. 1777 et seq. generally.
In the purchase agreement, the Cleven-gers agreed to lease the Lemke home if the sale of the Clevenger home was not finalized by May 30, 1986. The lease was to continue, as per the written terms of the contract, until the Clevenger home was sold. The Clevengers in fact paid rent for the month of June, 1986, and sent the rent for the month of July, 1986, which was never received. Thereafter, the Cleven-gers removed their home from the market sometime after July, 1986, only two months after the purchase agreement expired under its own terms. The lease term, however, was to continue until their home was sold. The trial judge determined that the lease term was effective from June 1,1986, through June 3, 1987, the date the Lemke home (the object of the lease) was sold at sheriffs sale.
The trial judge, in construing the written provisions contained in the purchase agreement and the provisions of the oral agreement, determined that the three requisites of a valid lease were present, namely that the object and the term were provided for in the written agreement and that there was an oral agreement as to the price. After carefully reviewing the entire record, we find no error in the trial judge’s determination that the parties entered into a valid lease, which was breached by the Clevengers.
ATTORNEY’S FEES
The Clevengers contend that the trial court erred in awarding the Lemkes attorney’s fees. The Clevengers reason that attorney’s fees may only be granted when there is a specific statute authorizing them or where they are provided for by contract, citing Evans v. Century Ready Mix Corporation, 446 So.2d 860 (La.App. 2nd Cir.1984).
The Lemkes answered the appeal, requesting additional attorney’s fees of $2,500.00.
Attorney’s fees generally are not awarded unless specifically provided for by contract or by statute. Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc., 449 So.2d 1014 (La.1984); Department of Health and Human Resources, Office of Charity Hospital of Louisiana at New Orleans v. Thompson, 460 So.2d 47 (La.App. 1st Cir.1984); Concrete Control Division, Inc. v. Cement Products Service, Inc., 457 So.2d 769 (La.App. 1st Cir.1984).
In the instant case, the written contract served a dual purpose. First, it contained a purchase agreement conditioned upon the sale of the Clevenger home by May 30, 1986. Secondly, the written contract contained some provisions regarding the lease. However, the written contract was silent as to an essential element of the lease, namely price. The agreement as to price was a separate oral agreement.
The written contract contained the following language with regard to attorney’s fees:
In the event of default by either party, the non-defaulting party shall have the right to demand and sue for specific performance and/or damages. The defaulting party under this contract shall also be liable for the REALTOR’S fees and all attorney’s fees and other costs incurred in the enforcement of any and all rights under this contract.
There is no evidence that the oral agreement entered into between the parties con *568 tained a provision for attorney’s fees, nor is there any statutory authority authorizing an award of attorney’s fees.
Because the written contract, standing alone, was insufficient to constitute a valid lease and because the oral agreement was silent as to attorney’s fees, we find that attorney’s fees were not clearly provided for in the total lease agreement and that, as such, the trial court erred in awarding the Lemkes $7,500.00 in attorney’s fees. Because we find that the trial court award of attorney’s fees was improper, we find that the Lemkes are not entitled to additional attorney’s fees on appeal. See Thomas v. Pace, 496 So.2d 609 (La.App. 1st Cir.1986); Welch v. Fuhrman, 496 So.2d 484 (La.App. 1st Cir.1986); Concrete Control Division, Inc. v. Cement Products Service, Inc., supra.
CONCLUSION
For the above reasons, that portion of the trial court judgment determining that there was a valid lease and awarding the Lemkes $6,050.00 is affirmed. The trial court’s judgment awarding $7,500.00 in attorney’s fees is reversed. In all other respects, the trial court judgment is affirmed. Costs are assessed equally against the Lemkes and the Clevengers.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
LANIER, J., concurs.

. Subsequent to the original trial court judgment, the Amidons filed for relief under the federal bankruptcy laws. Therefore, all issues pertaining to the Amidons are not before this Court,

. LSA-C.C. art. 2674 provides:
To let out a thing is a contract by which one of the parties binds himself to grant to the other the enjoyment of a thing during a certain time, for a certain stipulated price which the other binds himself to pay him.