HAMITER, Justice.
 

 Walter E. Bornemann, ¡the testamentary executor of the succession, of, Mrs. Carla Hellmers Bornemann, instituted this specific performance action against Mrs. Loretto McKenna Richards to compel her to take title to certain residential property in the City of New Orleans, owned by the succession and located at No. 1630 Arabella Street, in accordance with an alleged agreement of purchase and sale entered into on November 14, 1961. Alternatively, he prayed that the court decree a forfeiture of the deposit of $6600 (10% of the proposed purchase price) made when the contract was confected.
 

 In her answer the defendant admitted her having entered into the agreement. Then she set forth two grounds in defense of her act of withdrawing therefrom, namely: (1) before title was tendered á substantial part of the flower garden, which was one of the property’s principal attractions, had been ruined by a heavy freeze that occurred in mid-January, 1962, and, (2) a survey revealed that the brick walls surrounding the rear portion of the property, and which she had good reason to believe were being sold to her, did not even belong to the succession.
 

 Maintaining the first defense, the district court dismissed the suit and ordered that the defendant’s deposit be returned to her. In appealing, the plaintiff abandoned his demand for specific performance and sought only to be decreed entitled to the funds deposited. The Court of Appeal, following a hearing, reversed the district
 
 *856
 
 court’s judgment and ordered that the deposited $6600 be forfeited to the plaintiff. La.App., 153 So.2d 456.
 

 To review the decision we granted certiorari. 244 La. 1007, 156 So.2d 58.
 

 The first defense — that the defendant was relieved from complying with the agreement to purchase because of the partial destruction of the flower garden — is based on the provisions of Revised Civil Code Article 2455 which read: “If, at the moment of the sale, the thing sold is totally destroyed, the sale is null; if there is only a part of the thing destroyed,
 
 the purchaser ■has the choice,
 
 either
 
 to abandon the sale,
 
 or to retain the preserved part, by having the price thereof determined by appraise.ment.” (Italics ours.)
 

 Revised Civil Code Article 2461 provides .that “Accessories included unless reserved. —The sale of a thing includes that of its accessories, and of whatever has been destined for its constant use, unless there be a reservation to the contrary.” Unquestionably, particularly since there was no reservation in the instant contract, the garden was a part of, and an important accessory to, the residential property which plaintiff proposed to sell to the defendant. Further, the evidence conclusively shows that a substantial portion of it was destroyed by the unusually severe freeze of several days in January, 1962 — prior to the time plaintiff tendered title.
 

 Of course, there is a discrepancy between the estimates given by the two expert gardeners for the cost of replacing the ruined plants. Plaintiff’s expert said that it could be accomplished for $350, although he also testified that the replanting of a cocculus tree of the size killed would alone cost approximately $300. On the other hand, the defendant’s expert testified that it would necessitate an expenditure of approximately $911, this including a $240 labor charge for pruning and cleaning up the damaged shrubbery. However, both agreed that the replacement work would not immediately result in putting the flower garden in the same condition that it was prior to the freeze; that only much care and time thereafter could achieve that end. In this connection, their testimony was that the time required for the new plantings to reach the former growth would be from one to five years.
 

 While conceding some destruction in and to the garden, the plaintiff insists that the incidence of damage relative to the entire value of the property is not so much as would justify the court in applying the provisions of Revised Civil Code Article 2455 as written. It is contended that such article should be interpreted to mean, as in actions of redhibition, that the buyer has not the option to withdraw from the agreement unless the partial destruction be such as would bear a substantial relation to the value of the thing to be sold; or, as stated in
 
 *858
 
 his brief to this court, “ * * * that, in order to vitiate the sale, the thing itself (not an ‘accessory’ not essential to its use for the purpose intended) would have had to be, not ‘damaged’ but at the very least ‘partially destroyed to the extent that it could not be used for the purpose for which it was intended.’ ”
 

 The fault in this argument, which was accepted by the Court of Appeal, is that the unambiguous provisions of Revised Civil Code Article 2455 do not lend themselves .to such an interpretation. The language of this article, which permits the prospective purchaser either to abandon the sale if the thing has been partially destroyed or to take the property at its diminished value, is in no way comparable to that of the codal article wherein a redhibitory defect (that for which an executed or completed sale may be set aside) is defined as one which renders the thing sold “either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.” (Revised Civil Code Article 2520.) Moreover, in the articles dealing with redhibition the court is specifically authorized, in an action to annul a completed sale, to “decree merely a reduction of the price” (Revised Civil Code Article 2543) if the defect is such as merely to diminish the value; whereas, there is no corresponding article among those relating' to a- promise to sell, such as we have here.
 

 It occurs to us that we are compelled to note the vastly different language used in the articles pertaining to a promise to sell (looking forward to a future sale) and in those which permit the dissolution of a completed sale, and to conclude that because of such difference the redactors of the Code did not intend that the result in the two situations would be the same. Consequently, we find no justification for applying the principles involved in the redhibitory actions (reláting to completed sales) to the present suit,- for'herein we are concerned with only a promise to sell and buy. (Incidentally, the plaintiff, in this suit, by his course of action, has prevented the courts from ordering a sale with a diminution of price. The result of this is that if we adopted the conclusion now sought by him, and reached by the Court of Appeal, the defendant will be compelled to surrender her full deposit, although the plaintiff is not offering the damaged property at a diminished price.)
 

 Since Revised Civil Code Article .2455 was adopted almost verbatim from the Code Napoleon we have recourse to the observations of the French commentators which have been thoroughly briefed by counsel for both parties. At best, it can be said that their opinions. are divergent, some holding that the purchaser has the option to. abandon the sale in. all cases, ..no
 
 *860
 
 matter how insignificant the loss might be, while others recognize that there are situations wherein the courts would uphold the contract. And in the latter group there is further disagreement as to the extent of loss which might permit the contract’s maintenance. Suffice it to say that the French commentators were referring to completed sales since the French, neither in practice nor. in law, admitted the “promise to buy and sell” as is authorised by the law of this state. See Louisiana State Law Institute Translation pf Planiol, Traite Elementaire De Droit Civil, Volume 2, Part 1, Sections 1400 and 1407.
 

 The redactors of our Code recognized the expressions of those commentators in dealing with the rescission of completed sales in the redhibitory articles. Thus, we included in our Revised Civil Code Articles 2542-2544 (not found in the Code Napoleon) the suggestions of Duranton and Tróplong that the judge should be permitted to uphold the executed sale by decreeing a diminution of the price. On the 'other hand, as we have already pointed oiit, no ■ similar ■ provisions were adopted with ■ regard to loss or damage after an agreement to sell but prior to the completed sale.
 

 The November 14, 1961 agreement (on which the plaintiff herein relies) is not an executed sale, but it is what -has long been recognized in our jurisprudence as an agreement to buy and sell; and, incidentally, on its face it is entitled just that: “Agreement to Purchase or Sell”. According to its terms the purchaser’s right to occupancy would commence “at act of sale”; the real estate taxes and rentals (if any) were “to be prorated to date of act of sale”; the purchaser was granted the right to have the property surveyed at her expense; and the act of sale was to-be passed on or prior to a future specified date, at which time presumably the balance of the price would be paid in cash since the agreement recites that the sale was to-be a cash transaction.
 

 This court has long recognized that such an agreement respecting real estate is not a sale; it does not convey title nor place the thing at the risk of the proposed buyer; and the latter has the right to withdraw if the property’s condition has changed so as to adversely affect its value. See Page v. Loeffler, 146 La. 890, 84 So. 194, 22 A.L.R. 563. True, Revised Civil Code Article 2456 does recite that “The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid.” But we have said on innumerable occasions that this article,, when read in connection with Revised Civil
 
 *862
 
 Code Article 2462, simply means that as to immovables such an agreement amounts to a sale only insofar as it gives either party the right to enforce specific performance of same. Trichel v. Home Insurance Company, 155 La. 459, 99 So. 403; Pruyn v. Gay, 159 La. 981, 106 So. 536; McMillan et al. v. Lorimer, 160 La. 400, 107 So. 239; Capital Building and Loan Association v. Northern Insurance Company of New York, 166 La. 179, 116 So. 843; Buckman v. Stafford, Derbes
 
 & Roy,
 
 Inc. et al., 167 La. 540, 119 So. 701; Davis v. McCain, 171 La. 1011, 132 So. 758.
 

 Therefore, when Revised Civil Code Article 2455 is read in the light of our well established jurisprudence, relative to the effect of an agreement to sell and purchase real estate, it is clear that any destruction or damage occurring during the period between the signing of the contract and the execution of the deed, and which results in a diminution of the value of the object involved, gives rise to the choice of the purchaser provided for in that article. We do not mean to hold that any trifling change in the condition of the property will have such effect. But we do hold that when the change is such as to cause a diminution in the value of the object to be sold, as occurred here, the article is applicable.
 

 Plaintiff also suggests that because of the similarity of the langauge of Revised Civil Code Articles 2455 and 2697 we should in interpreting the former be guided by the decisions of this court which have construed the latter. Concededly, the cases referred to by plaintiff have held that even extensive damage to leased premises will not give the lessee the right to cancel the lease if he is still able to use the property, with only minor and temporary inconvenience, for the purpose of which it was rented. But this conclusion was not reached on an interpretation of Revised Civil Code Article 2697 alone. It was based on a consideration of the fact that such article is but one “of the interrelated provisions of the Code governing contracts of lease”, and that the other pertinent provisions must also be given effect. See Bernstein v. Bauman et al., 170 La. 378, 127 So. 874 and cases cited therein. Particularly relied on in that case was Revised Civil Code Article 2700 which recites in part, that: “If, during the continuance• of the lease, the thing leased ■ should be in want of repairs, and if those repairs can not be postponed until the expiration of the lease, the tenant must suffer such repairs to be made, whatever be the inconvenience he undergoes thereby, and though he be deprived either totally or in part of the use of the thing leased to him during the making of the repairs. * * * ”
 

 Also, under Revised Civil Code Article 2695 the landlord is not required to guarantee the lessee against all vices and defects, but only against all the, “vices and
 
 *864
 
 defects of the thing,
 
 which may prevent its being used
 
 * * *, at the time the lease was made, and even if they have arisen since * * * ”; and Revised Civil Code Article 2699 declares that
 
 “If
 
 * * *
 
 the thing cease to be fit for the purpose for which it was leased,
 
 or if the use be much impeded, * * * the lessee may, according to circumstances, obtain the annulment of the lease * * Thus, it was with the view of harmonizing all of these provisions relative to lease that the court held that the partial destruction referred to in Revised Civil Code Article 2697 must be such as to make the property unfit for the use for which it was intended, or to seriously impair its use by the lessee. In connection with the articles relating to promises to buy.and sell we find no corresponding provisions.
 

 While the exact point presented here was not • directly passed on in Daum et al. v. Lehde et al., 239 La. 607, 119 So.2d 481, this court impliedly recognized therein the right of the proposed purchasers to exercise the option granted in Revised Civil Code Article 2455 where fire had damaged thé building which they had agreed to purchase. The actual holding of the case was that the choice had been lost because of the buyers’ failure to timely exercise it.
 

 A further reason why we are of the opinion that this plaintiff is not entitled to retain defendant’s deposit is that the agreement to purchase was made subject to a suspensive condition, and the partial destruction of the flower garden occurred prior to the happening of the conditioning event. It is to be remembered that the property at No. 1630 Arabella Street belonged to a succession, and it was to be transferred at a private sale. Such action required court approval following due advertisement of the proposed sale. Louisiana Code of Civil Procedure Articles 3281 to 3284. Because of this requirement the agreement entered into between the plaintiff and defendant on November 14, 1961 was particularly made “Subject to Court Approval.” That condition suspended the effectiveness of the agreement until the happening of the event, and until the granting of court approval neither party had a right to enforce specific performance. Revised Civil Code Articles 2043, 2471 (which deals with completed sales), and Wampler v. Wampler, 239 La. 351, 118 So.2d 423.
 

 Pursuant to the mentioned provisions respecting private sales of succession property the proposed sale was advertised and thereafter approved by the court on January 2, 1962. However, it appeared that there were defects in the advertisement; and, by agreement of the parties, the time for executing the deed was postponed, the proposed sale was readvertised, and a new order of authorization was not obtained until February 28, 1962.
 
 *866
 
 Meanwhile the freeze referred to earlier, with its resulting destruction, occurred. Consequently, Revised Civil Code Article 2044 is applicable, it reading: “When the obligation has been contracted on a suspensive condition, the thing, which forms the subject of the contract, is at the risk of the obligor, until the event which forms the condition has happened, subject however to the following restrictions and modifications of his responsibility:
 

 “If the thing be entirely destroyed, without the fault of the debtor, the obligation is extinguished.
 

 “If the thing be impaired, without the fault of the debtor, it is at the option of the creditor, either to dissolve the obligation, or to require the thing in the state in which it is, without diminution of the price.
 

 “If the thing be impaired, through the fault of the debtor, the creditor has a right to dissolve the obligation, or to require the thing in the state in which it is, with damages.” See also Revised Civil Code Article 2471 (affecting completed sales).
 

 Finally, the plaintiff urges that the defendant was obligated to purchase because her action in agreeing in writing to extend the time for passing the act of sale constituted a novation, and since that took place after the occurrence of the freeze it bound her to take. title even though the property had been partially, destroyed. There is no merit in this argument. When the extension of time was agreed to by the defendant she was unaware of the nature or extent of the freeze damage. Moreover, it is plain that no novation was intended, for all that the parties expected to do was to extend the time for performance of the original agreement. Again, the plaintiff himself is not even suing here on a novated contract; he relies exclusively on the provisions of the November, 1961 agreement. If that has been cancelled, there is no evidence of the nature of a new obligation which took its place. In the light of Revised Civil Code Article 2187 clearly no novation resulted. It recites: “The preexistent obligation must be extinguished, otherwise there is no novation; if it be only modified in some parts, and any stipulation of the original obligation be suffered to remain, it is no novation.”
 

 In view of the conclusion we have reached hereinabove it becomes unnecessary for us to pass upon the aforestated second defense.
 

 For the reasons assigned the judgment of the Court of Appeal is reversed and set aside, and the judgment of the district court dismissing plaintiff’s suit and ordering the return to defendant of the $6600 deposit is reinstated and made the judgment of this court. Plaintiff shall pay all costs.
 

 FOURNET, C. J., absent.