JANVIER, Judge.
Plaintiff, doing business as Continental Iron Works, makes and installs ornamental iron work on buildings constructed or under construction. He seeks to recover a balance alleged to be due for work done on a building and a fence enclosing an adjacent swimming pool and which building was under construction by Elwin Corporation as contractor for Lanai Company, Inc., the owner.
The general contract was written and duly recorded and the surety on the contract was the Fidelity and Deposit Company of Maryland.
Plaintiff sued all three corporations, the contractor, the owner and the surety, claiming that under a contract with Elwin Corporation he had been employed to make and install certain ornamental iron work; that his work had been done for an agreed price of $6,500.00, and that there was due him a balance of $2,401.97. He prayed for soli-dary judgment against all three corporations, with interest, and attorney’s fees of $100.00, plus costs.
Fidelity and Deposit Company of Maryland denied all of the allegations and as third party plaintiff made Elwin Corporation, Milton J. Jacobs and Joseph Crucia, Jr., third party defendants, the two latter, as indemnitors who had agreed to hold the bonding company harmless in case of loss. Elwin Corporation, Lanai Company, Inc., Milton J. Jacobs and Joseph Crucia, Jr., filed answer, apparently in answer to the petition of plaintiff and also in answer to the third party petition of Fidelity and Deposit Company. While this answer is confusing, it is obvious that it was denied that there was anything due to plaintiff on the work which he had done, and it was especially denied that the work had been done under an agreement to pay $6,500.00 or any fixed price for the work.
The matter then came to trial and plaintiff testified that he had stated no fixed *768 price for the work; that he had been merely employed to duplicate on that building certain iron work which had already been done by another contractor on an identical building which had already been completed. On this testimony motion for summary judgment to dismiss the suit was filed. The District Judge said that he would not grant the motion for summary dismissal but would permit plaintiff to amend, basing his claim on quantum meruit. The Judge said:
“* * * the Court will permit him under the broad language of the Code of Civil Procedure which provides that nobody shall be deprived of their right to a trial * * * to amend his petition.”
Plaintiff then filed an amended petition in which he alleged that he “rests his claim on a verbal contract between himself and the defendant, Elwin Corporation.” He added: “If the court concludes that there was no contract either verbal or implied in fact, alternatively, then the petitioner rests his claim on a quantum meruit basis for the labor performed and the material supplied.”
All defendants answered the amended petition, the purport of the answer being that there was nothing due to plaintiff.
The matter then came up for trial on the amended petition, and there was judgment in plaintiff’s favor and against defendants, Elwin Corporation, Lanai Company, Inc., and Fidelity and Deposit Company of Maryland in solido for the full sum of $2,401.97, with legal interest and costs, and further judgment in favor of the third party plaintiff, Fidelity and Deposit Company of Maryland, against the third party defendants, Elwin Corporation, Lanai Company, Inc., Milton J. Jacobs and Joseph Crucia, Jr., in solido, for the sum of $2,401.97 and attorney’s fees to be fixed by the court, together with legal interest and costs.
Elwin Corporation, Lanai Company, Inc., Milton J. Jacobs and Joseph Crucia, Jr., filed application for a new trial on the ground that plaintiff, having made claim in quantum meruit, had not produced sufficient evidence to show that the amount charged was equitable and proper. The new trial was granted. The matter again came up for trial and there was judgment in accordance with the judgment which had been rendered at the first trial, except that the fee of the attorney for plaintiff was fixed at $425.00. All defendants have appealed from that judgment and plaintiff has answered praying for damages for frivolous appeal, which demand was neither briefed nor argued by counsel.
Plaintiff testified at both trials, the purport of his testimony being that he had been contacted by Mr. Crucia, Secretary, and Mr. Jacobs, President, of the contracting corporation, and had been asked what he would charge for duplicating the iron work on the already completed building on which that work had been done by another iron work contractor, and that he had stated that he had offered to do the work on the other building for $8,000.00, but that his bid had not been accepted. He said that some time later he was approached and was asked when he intended to start the work and he said that he had not previously been told to do the work. He said that he was then ordered to go ahead and had done so without any agreement as to price. He said that he had completed the work and that a fair charge had been $5,373.00 and that later, not having been paid for that work, he had been asked to construct a fence around the swimming pool which apparently had been built in connection with the building on which he had done the iron work and that he had said that he could not build the fence unless he received some payment on the completed work. He says that he had been paid $2,-000.00 and that before he would start the fence he demanded an additional payment and that on January 21, 1965, he was paid an additional sum of $2,000.00, making a total payment of $4,000.00 on his first bill of $5,373.00, leaving a balance of $1,373.00. He then says that he completed the fence and that a fair charge for that was $1,028.- *769 97, so that the balance due for the unpaid portion of the first work, together with the charge for the fence is $2,401.97, the amount now sued for.
The defendants made two contentions; first, they say that the fence was included in the original charge and that it had been completed when plaintiff demanded the second payment of $2,000.00, and that his bill which was rendered at that time and which showed a total charge of $5,373.00, while it made no mention of the fence, actually included the charge for it.
The second contention of the defendants is that since this is a suit in quantum meruit, plaintiff was called upon to prove that the charges made were proper and in accord with what would have been a fair charge in this area at that time, and that even at the second trial plaintiff made no effort to produce any proof except his own statement based on a memorandum which he made from his own books and which showed what he had paid for labor and material which was necessary in doing the work; that, added to these charges, plaintiff made an exorbitant charge for his markup on the materials used and for his profit and that the $4,000.00 already paid to plaintiff was all that was due him for the iron work on the building and the fence.
Although when the matter was first heard and it was conceded that no fixed price had been agreed upon, when the case was finally tried plaintiff attempted to show that a price of $8,000.00 had been fixed. He was questioned concerning his conversation with Mr. Jacobs, who was President of Elwin Corporation, and he was asked: “Did he ever tell you, yes, he was going to give you $8,000.00 to do this work” ? He answered: “He told me go ahead and do the job.” A little later he was questioned concerning a conversation with Mr. Crucia, who was secretary of the corporation, and he said: “I told him $8,000.00 you got to figure.” Still later he was asked: “What exactly did you tell Mr. Crucia at that time” ? He answered: “For the building similar to that it will have to cost him $8,000.00. No swimming pool was included in that.”
Mr. Jacobs, the President of Elwin Corporation, and Mr. Crucia, the secretary, both say that it was never contemplated that more than about $4,000.00 would be the cost of both the work on the building and the fence. And Mr. Jolet, who had retired but who for many years had been engaged in a business exactly like that of plaintiff, said that $4,000.00 or $4,300.00 would be ample payment for the work which plaintiff had done.
So far as the fence is concerned, there is no certainty in any of the testimony either of the plaintiff or defendants which would enable us to reach a conclusion if we were required to rely merely on the testimony in an effort to determine whether the fence was contemplated in the original discussions. We do find, however, that when plaintiff was asked to do the work which was to be in accordance with the same work which had been done by the other contractor, the swimming pool at the other building and the fence around it had been completed.
We find no contradiction of the statement of Mr. Crucia to the effect that when plaintiff inspected the other building, the “old one had a swimming pool with a railing around it all at the time that Mr. Liwerant went down there and measured up.”
The testimony of plaintiff himself shows plainly that he knew that a swimming pool was connected with the other building. It is as follows:
“Q. * * * did you see the building that Mark Smith built ?
“A. I did.
“Q. Did it have a swimming pool ?
“A. Yes, it does.
*770 “Q. Was the swimming- pool there before Mr. Crucia or the Elwin Corporation commenced construction?
“A. Which swimming pool you talking about ?
“Q. The swimming pool on the Mark Smith Building?
“A. Yes.
“Q. In other words, then, you knew that there was a swimming pool there ?
“A. Yes, I knew.
“Q. Before you started any work?
“A. Yes.”
Obviously, then plaintiff was aware of the fact that a swimming pool was to be fenced on the property on which he was to work. He said that he would not build the fence until he received an additional payment. His second bill of $1,028.00 for the fence was dated the next day, January 22, 1965, which would indicate, if plaintiff is truthful, that he constructed the entire fence, figured the cost and then, in 24 hours, was able to determine the amount of the charge and to present his additional bill.
For these facts and because plaintiff has not produced convincing evidence that the fence was built under an additional order, we conclude that it was contemplated in the original work and was included in the bill for $5,373.00 on which $4,000.00 has been paid.
We must then determine whether the $5,373.00, which plaintiff contends was a fair price for the building work alone, was a fair price for both the building and the fence.
Since plaintiff was under the duty of producing proof that his charges were fair and since we feel that there is a grave doubt as to whether, on a quantum meruit of this size, which is more than $500.00, the mere statement of the plaintiff, based on memoranda taken from his own books, is itself sufficient to sustain the burden.
However, in addition to the testimony of plaintiff, we find interesting the fact that there seems to have been no complaint made about the bill for $5,373.00 on which Elwin Corporation paid $4,000.00 on account. It is true that the bill to which we have referred is not positively shown to have been received by defendant, Elwin Corporation, but plaintiff says that: “I mailed a final bill and I was waiting.” (Whether he meant the bill for $5,373.00 or the bill for the iron railing, we cannot tell.) Neither Mr. Jacobs nor Mr. Crucia admitted having received the bill, but Mr. Jacobs said that he received “thousands of bills” and when asked if he received that bill he answered: “I don’t know.” Plaintiff told Mr. Crucia that he was sending an additional bill for the swimming pool, but Mr. Crucia testified that he did not receive it.
At any rate, at this time when it is not denied that the second payment was made and it is not denied that the plaintiff was demanding $5,373.00, it appears to us that defendants cannot be heard to say that the charge of $5,373.00 was exorbitant.
While we feel that plaintiff himself has not produced convincing evidence of the correctness of his charge, we do feel that the payment of the second $2,000.00 on a bill which showed a balance to be due of $1,-373.00 constituted sufficient evidence to justify the conclusion that the plaintiff’s charges were fair and equitable, but that they did include the fence as well as the other iron work.
We are, therefore, of the opinion that the amount due plaintiff is not the total amount claimed — $2,401.97, but that he is entitled to the balance due on the bill which was presented when he received the second $2,000.-00, this balance being $1,373.00.
In the District Court interest was allowed from judicial demand. Since this is a suit in quantum meruit, interest should be *771 allowed only from the date of final judgment.
In Sugar Field Oil Co. v. Carter, 214 La. 586, 38 So.2d 249, the Supreme Court said:
“The plaintiff prayed for interest from date of judicial demand. The recovery in this suit is predicated on quantum meruit. It is, therefore, an unliquidated claim. * * * In this suit the district judge correctly allowed interest from the date of judgment. On that date the claim had become certain and liquidated by reason of the judgment. Connette v. Wright, 154 La. 1081, 1090, 98 So. 674.”
We note the statement that interest is to be allowed from date of judgment in a suit in quantum meruit. However, since the amount allowed in the judgment of the District Court is being reduced by our judgment, the claim remains unliquidated until the finality of our judgment. Accordingly, interest is allowed only from the finality of this judgment.
Plaintiff’s claim for $100.00 as an attorney’s fee under R.S. 23:632 and fixed in the judgment appealed from at $425.00 cannot be allowed as this is not a suit for the payment of wages, but is a suit in quantum meruit. Attorney’s fees cannot be recovered unless authorized by statute or contract.
Accordingly, the judgment appealed from is amended by the reduction of the amount thereof in favor of plaintiff to $1,373.00, with legal interest from the finality of this judgment; as to the third party plaintiff, Fidelity and Deposit Company of Maryland, the judgment in its favor is also reduced to $1,373.00, with legal interest from the finality of this judgment; that portion of the judgment which is in favor of plaintiff for an attorney’s fee is annulled, avoided and reversed; in all other respects the judgment is affirmed, costs of this appeal to be paid by plaintiff.
Reversed in part, amended and affirmed.