342 So.2d 1237 (1977)
Patricia BLAIR
v.
Calvin DIAZ et al.
No. 7661.
Court of Appeal of Louisiana, Fourth Circuit.
February 15, 1977.
Rehearing Denied March 15, 1977.
Writ Refused May 6, 1977.
*1238 Murray, Murray, Ellis & Braden, Romualdo Gonzalez, New Orleans, for plaintiff-appellant.
Michael H. Bagot, John H. Gniady, New Orleans, for Calvin Diaz.
Before SAMUEL, REDMANN, GULOTA, STOULIG and BOUTALL, JJ.
GULOTTA, Judge.
This litigation arises out of a contract to purchase real property. Plaintiff-purchaser in a suit for refund of his deposit names the vendor and his real estate agent as defendants. Judgment was rendered in favor of plaintiff and against the realtor and his realty company in the sum of $4,000.00, the amount of the deposit. Judgment was further rendered in favor of the seller on his reconventional demand in the sum of $1,750.00, for rent during plaintiff's occupancy of the premises.
In appealing, plaintiff complains the trial judge erred in failing to cast defendant-seller in judgment, in solido, with the realtor for the amount of the deposit and seeks further to have the judgment in favor of defendant-in-reconvention set aside. Neither the seller nor the realtor has appealed or answered the appeal.
The standard real estate form contract included the following stipulations: ". . . for the sum of Thirty-eight thousand ($38,000.00) Dollars, on the terms of Four thousand dollars Cash, Balance of $10,000.00 down payment to be made upon settlement of litigation concerning husband's death. House to be restored to original condition as nearly as possible." The agreement was entered into on June 30, 1971, and the act of sale was to be passed on or before August 31, 1971.
Mrs. Blair moved into the premises on July 16, 1971. According to her testimony, nothing had been done to make repairs on the house at that time. The needed improvements included, among others, floor repairs, painting, faucet replacements, dishwasher, garbage disposal and sink repair, other plumbing repairs, and fixing the inoperative central air and heating system. Plaintiff testified that for the most part the needed repairs, with the exception of those to the central air and heating system, were made (during her occupancy) through her efforts and those of a friend.
It is the failure by the seller and his agent to repair the air conditioning and heating system which caused the sale to be aborted after extensions had been granted to January 7, 1972. Plaintiff continued to occupy the premises from July 16, 1971 to February 16, 1972. According to Mrs. *1239 Blair, repeated attempts to have the realtor-agent arrange for the air conditioning and heating system repairs were to no avail. Complaints made to the seller were referred to the agent. Because of lack of heating, plaintiff vacated the premises in February, 1972, and this suit followed.
We are confronted, initially, with the question whether the purported agreement actually came into existence. The perfection of the contract is dependent upon the happening of an uncertain event,[1] i.e., "Balance of $10,000.00 down payment to be made upon settlement of litigation concerning husband's death". In such case, the uncertainty the settlement of litigation, becomes a condition.[2] LSA-C.C. art. 2043[3] relating to suspensive conditions provides that when an obligation is dependent on a future and uncertain event, the obligation cannot be executed until after the happening of the event. See also Dufrene v. Tracy, 232 La. 386, 94 So.2d 297 (1957); Boudreaux v. Elite Homes, Inc., 259 So.2d 669 (La.App.4th Cir. 1972), writ denied, 261 La. 1061, 262 So.2d 42 (1972).
According to the purported agreement, the sale was to take place on or before August 31, 1971. This date was extended to January 7, 1972; however, the sale did not take place. Plaintiff's wrongful death claim was settled with a jury verdict in June, 1973. Approximately 18 months elapsed between the extended date for the passing of the act of sale and the date of the settlement of the death claim.
In those cases where agreements are silent as to date,[4] our courts have supplied a "reasonable" date. Perrin v. Hellback, 296 So.2d 342 (La.App.4th Cir. 1974), writ denied, 300 So.2d 184 (La. 1974); Guzzo v. Liggio, 224 La. 313, 69 So.2d 357 (1953). When we consider the extended date for the passing of the act of sale, and the date that the claim was actually settled, we conclude that the happening of the occurrence did not take place within a reasonable time as contemplated by the agreement. Under the circumstances, the agreement did not come into existence and no rights flow either to the purchaser or to the seller. See Barber Asphalt Paving Co. v. St. Louis Cypress Co., 121 La. 152, 46 So. 193 (1908); Kansas v. Schaeffer, 299 So.2d 474 (La.App. 4th Cir. 1974), writs refused, 302 So.2d 616 and 302 So.2d 617 (La. 1974); Bornemann v. Richards, 245 La. 851, 161 So.2d 741 (1964). Accordingly, plaintiff is entitled to recover the $4,000.00 deposit, not only against the agent, but against the owner also, in solido. See Williams v. Meyer, 29 So.2d 599 (La. App. Orl. 1947).
We are in agreement with the conclusion reached by the trial judge that the defendant-seller is entitled to recover rent from plaintiff for the seven-month period that she occupied the premises. The agreement provided for immediate occupancy by the purchaser. Clearly, authorization for occupancy by the prospective purchaser was predicated on the sale of the property and, therefore, no agreement was made between the parties for any rent payment.
*1240 Nevertheless, because plaintiff was "unjustly enriched"[5] at the owner's expense by occupying the premises without any rent payment for the seven-month period, defendant is entitled to recover reasonable rent for that period. We are of the opinion, however, that the lack of air conditioning and heating during plaintiff's occupancy, caused by the owner's and his agent's dereliction, makes the sum of $250.00 per month rental, as determined by the trial judge, excessive. We conclude $100.00 per month is a more appropriate amount. Accordingly, defendant is entitled to offset[6] the $4,000.00 award in favor of plaintiff by the sum of $700.00, rent for the seven-month period at $100.00 per month.
Consistent with the above, the judgment of the trial court is amended and recast as follows: It is ordered that there be judgment herein in favor of Patricia Blair and against Carlton Picou, the Carver Realty Company and Calvin Diaz, in solido, in the sum of $4,000.00 with interest from the date of judgment in this court until paid.[7] It is further ordered that there be judgment in favor of Calvin Diaz and against Patricia Blair in the sum of $700.00, together with interest thereon from the date of judgment in this court until paid. This amount is to be set off against the $4,000.00 judgment in favor of Patricia Blair. Costs to be paid by Calvin Diaz. In all other respects, the judgment is affirmed.
AMENDED AND AFFIRMED.
REDMANN and BOUTALL, JJ., dissent in part.
REDMANN and BOUTALL, Judges, dissenting in part.
The death claim settlement provision of the written contract of June 30, 1971 may indeed be a conditiona condition which was not met by the contract's performance date of August 31, 1971. Even so, that June 30 contract authorized plaintiff to immediately occupy the premises (rent-free, since no rent was provided), and therefore the owner cannot complain of plaintiff's having occupied the premises under that contract.
Furthermore, the petition alleged and the answer admitted that the contract was extended many times. The condition of settling the death claim still was not met.
However, defendant himself testifies that on December 29, 1971 (While the extended contract was still in effect) he agreed with the lender's notary to pledge $4,400 of stock to the lender as additional security, to enable it to lend the entire balance of the price (including that part of the intended "down payment" which was to come from the settlement of the death claim). The cat of sale was set for January 7, 1972 on those terms.
The sale did not go through on January 7 because defendant did not repair the nonfunctioning central heat and air conditioning system and plaintiff (on advice of counsel) would not take title without it being repaired. (The buy-sell agreement obliged defendant to "restore to original condition as nearly as possible" and original condition included a functioning heating system.)
It thus appears that (1) the parties orally agreed to substitute for the death-claim condition a provision for a higher loan to be partly secured by the seller's stock, and (2) the orally-modified contract was breached by the seller by his failure to repair the heating system.
Any contract to sell land which depends for vitality upon an oral modification cannot *1241 be enforced because of parol evidence exclusionary rules. Nevertheless, the fact in our case is that there was a written contract, extended at least through December 29,1971, under which plaintiff was entitled to occupy the house free of rent. (There was further oral agreement, at least through January 7,1972, under which plaintiff could continue to occupy the house rent-free. Oral evidence is not admissible to prove title to immovables, but it should be admissible to prove that one occupied premises under an oral agreement which the occupier did not breach. However, this view relates to only a few days of plaintiff's occupancy.)
Plaintiff did not breach the contract, and there is no reason to penalize her for defendant's breach of the contract. It hardly seems fair that plaintiff could refuse to perform a (technically unenforceable) contract because the owner fails to spend $500, yet because of her refusal plaintiff must pay $700. Plaintiff would have been better off to tolerate the owner's partial breach and suffer the damages of $500 (or sue for that $500) rather than pay $700.
The owner's claim is, at best, one in the nature of unjust enrichment, an action de in rem verso (see Minyard v. Curtis Products, Inc., 1967, 251 La. 624, 205 So.2d 422). But plaintiff did not impoverish the owner by her occupancy during the period of the purchase agreement (and its extensions); she did not enrich herself "at the expense of" the owner, C.C. 1965 (if at all: when she left this house, she simply moved back to her mother's house, presumably rent-free). The owner would presumably not have been able to rent the house during the initial two-month period of the agreement (or during its extensions) while awaiting the scheduled sale, and therefore lost nothing by reason of plaintiff's occupancy. (Even had impoverishment occurred, there was no absence of justification or cause for the "enrichment"; the buy-sell agreement authorized the occupancy.)
Plaintiff continued occupancy, however, for ten days after she abandoned the buy-sell agreement (if its last extension had not already expired) by letter demanding return of her deposit. At that point she was without justification to remain without paying for occupancy, and the owner should have been free immediately to rent the house. The $250 monthly rate the trial judge allowed (the interest only of a loan on the $38,000 house) is reasonable upon the evidence, but the total award should be $83.33 for a third of a month.
NOTES
[1] LSA-C.C. art. 2049 reads as follows:

Art. 2049. Certainty of term
"Art. 2049. A term may not only consist of a determinate lapse of time, but also of an event, provided that event be in the course of nature, certain; if it be uncertain, it forms a condition."
[2] LSA-C.C. art. 2021 reads of follows:

Art. 2021. Conditional obligations, definition
"Art. 2021. Conditional obligations are such as are made to depend on an uncertain event. If the obligation is not to take effect until the event happen, it is a suspensive condition; if the obligation takes effect immediately, but is liable to be defeated when the event happens, it is then a resolutory condition."
[3] LSA-C.C. art. 2043 reads as follows:

Art. 2043. Kinds of suspensive conditions, effective date of obligations
"Art. 2043. The obligation contracted on a suspensive condition, is that which depends, either on a future and uncertain event, or on an event which has actually taken place, without its being yet known to the parties.
"In the former case, the obligation can not be executed till after the event; in the latter, the obligation has its effect from the day on which it was contracted, but it can not be enforced until the event be known."
[4] In our case, the agreement was silent on the date for the "settlement of litigation concerning" the death claim.
[5] See Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967); V-8 Taxi Cab Service, Inc. v. Hayes, 322 So.2d 442 (La.App. 4th Cir. 1975).
[6] Cox v. W. M. Heroman & Co., Inc., 298 So.2d 848 (La. 1974); Neyrey v. Wright, 134 So.2d 345 (La.App. 4th Cir. 1961); Olinde Hardware & Supply Co. v. Ramsey, 98 So.2d 835 (La.App. 1st Cir. 1957).
[7] Interest on unliquidated claims (other than delictual claims [LSA-R.S. 13:4203]) runs from date of final judgment rather than from date of judicial demand. See Sugar Field Oil Co. v. Carter, 214 La. 586, 38 So.2d 249 (1948); Liwerant v. Elwin Corporation, 206 So.2d 766 (La.App. 4th Cir. 1968); Succession of Butler, 294 So.2d 512 (La. 1974).