CHEHARDY, Judge.
This appeal arises from a suit to obtain an injunction enforcing an agreement not to compete. The sole issue before us is whether the plaintiff, Robert E. Cochran, is entitled to recover attorney’s fees and costs from defendant, Louis I. Crosby, Jr. Cochran alleges he is entitled to these pursuant to a provision contained in an August 1, 1980 agreement by which Cochran bought out Crosby’s stock in an insurance brokerage firm. That provision states,
“As still further consideration for the conveyance and transfer herein made, Vendor agrees that from August 1, 1980, and for a period of two (2) years thereafter, he will not (unless acting as an officer or employee of Vendee, Special Risks Underwriters, Ltd. or any other corporation or firm controlled by Vendee, or with Vendee’s prior written consent), directly or indirectly own, manage, operate, join, control, or participate in the ownership, management, operation, or control of, or be connected in any manner with any business which will in any manner directly or indirectly compete with, become interested in any competitor of, or solicit the customers of, the Vendee, or any firm or corporation controlled by Vendee engaging in the business of insurance underwriting, within the geographical area of the State of Louisiana, and for a radius of 100 miles north of the Gulf of Mexico within the confines of the State of Mississippi. Vendor agrees that any breach of this covenant will leave Vendee without an adequate remedy at law and that Vendee shall be entitled to injunc-tive relief as provided by law [and] to recover reasonable attorney’s fees and all expenses incurred by Vendee to enforce this provision.” (Emphasis added.)
Subsequently, on May 26, 1981, at Crosby’s request, Cochran sent him the following letter:
“This letter will serve to you as an agreement or understanding on my behalf relative to your desire of going into business for yourself while still under the covenant not to compete incorporated into the sale of corporate stock between ourselves dated August 1, 1980.
“While I fully expect the terms of this agreement to be essentially fulfilled, I do understand that it is important that you be given the opportunity to make a fair living and do in no way wish to impede that, however, it must be understood that I too have a considerable investment in the purchase of your previous operation and therefore am entitled to certain considerations. I do therefore agree to allow you to enter into your own new business, that of a Surplus Line Broker or General Agency, which would of course, take in some degree the form of competition to us. I do however, expect you not to compete directly with me from the standpoint of soliciting any of the business of SIS, Inc., or SRU and most particularly its renewals. Further, I would expect you would do nothing in any manner to jeopardize any of the contractual relationships of either SIS, Inc. or SRU with its existing clients or companies.
“Any breech [sic] of this agreement or understanding would then of course revert back to the original paragraph of the contract basically stating; ‘that we would *902 then have injunctive release [sic] as provided by law.’ ” (Emphasis added.)
Within a few days of receiving this letter, Crosby began operating a surplus line brokerage, Gem Underwriters of New Orleans, Inc., a corporation of which he owned 50% of the stock. The other 50% was owned by other investors.
When Cochran learned that Crosby’s new business was partly owned by other investors, he filed suit to enforce the noncompet-ition provisions of the sale agreement. In his petition of June 19, 1981, Cochran sought preliminary and permanent injunctions prohibiting Crosby from managing a business directly or indirectly competing with Cochran’s surplus line brokerage.
On July 28, 1981 Cochran was granted a preliminary injunction prohibiting Crosby from “participating in a business which is directly or indirectly competing with [Cochran] * * * in the business of insurance underwriting.” After an appeal by Crosby, the injunction was vacated because Cochran had failed to furnish the security required by law. After Cochran furnished the necessary security, the district court reinstated the injunction.
In June 1982, Crosby filed a motion to dissolve or modify the preliminary injunction. After a hearing, on July 7, 1982 the district court rendered judgment decreeing,
“ * * * Louis J. Crosby, be and is hereby authorized to enter into the insurance business as a surplus line broker, that business not to compete directly with the business sold to Robert E. Cochran and not to be in any form or substance engaged in soliciting any business of the said Robert F. [sic] Cochran or S.I.S. Inc. * * *
The judgment also provided that each party was to pay his own costs, but did not mention attorney’s fees. The silence of the judgment on the issue of attorney’s fees must be construed as a denial of Cochran’s request for them.
(The question of the granting and/or modification of the injunction is now moot, since under the terms of the agreement the time during which Cochran was entitled to an injunction expired on August 2, 1982.)
On appeal, Cochran argues that because he was successful in enforcing the noncom-petition provision contained in his sale agreement with Crosby, he is entitled to recover attorney’s fees as provided in that agreement.
In opposition, Crosby argues that the imposition of attorney’s fees is penal in nature, is not favored, and should not be imposed except in cases which are clear and free from any doubt. Crosby contends that, although injunctions were issued against him, there was no evidence presented of any “breach” of the covenant. He cites Cochran’s testimony that he had no direct knowledge or proof that Crosby had solicited any of Cochran’s business. Crosby avers the purpose of the injunction requested by Cochran was to prevent the occurrence of a possible breach by Crosby in the future.
On the other hand, Crosby does not mention his own admissions at trial that he had contacted customers of Cochran’s company to solicit business from them, prior to issuance of the first injunction.
The question is whether Crosby’s solicitation of business from customers of Cochran constituted a breach of the noncompetition covenant, so as to invoke the attorney’s fees clause.
The language of Cochran’s May 26, 1981 letter to Crosby is crucial, since it altered the terms of the original noncompetition agreement:
“ * * * I do however, expect you not to compete directly with me from the standpoint of soliciting any of the business of SIS, Inc. or SRU and most particularly its renewals. Further, I would expect you would do nothing in any manner to jeopardize any of the contractual relationships of either SIS, Inc. or SRU with its existing clients or companies.”
We find this language ambiguous. Cochran apparently interpreted it to mean Crosby was not to solicit business from any insurance agents who were currently customers of his. Crosby, however, apparently *903 interpreted it to mean he was not to solicit these agents to transfer to him any accounts which were currently being insured by Cochran. If we were to adopt Cochran’s interpretation, we would have to find Crosby breached the agreement, since he admittedly solicited current customers of Cochran. If we were to adopt Crosby’s interpretation, however, there would be no breach, because Cochran did not prove Crosby solicited any accounts or renewals of accounts currently placed with Cochran.
With respect to the interpretation of agreements, our Civil Code provides:
“When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation.” LSA-C.C. art. 1956.
“In a doubtful case the agreement is interpreted against him who has contracted the obligation.” LSA-C.C. art. 1957.
“But if the doubt or obscurity arise for the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted, whether he be obligor or obligee.” LSA-C.C. art. 1958.
Because Cochran wrote the letter which modified the original agreement, under LSA-C.C. art. 1958 the construction most favorable to Crosby must be adopted. Accordingly, we conclude that Crosby did not breach the noncompetition agreement and therefore Cochran is not entitled to attorney’s fees.
For the foregoing reasons, the judgment of the district court is affirmed.
AFFIRMED.