WICKER, Judge.
This appeal arises from a decision dismissing the claims of the sellers of immovable property and their agent for an alleged breach by the purchaser of an agreement to purchase or sell. The trial judge determined that a suspensive condition failed and that there was never a binding contract. The issue on appeal is the proper interpretation of this suspensive condition. We affirm the decision.
Plaintiffs are Joshua L. Butler, Jr. and Newman Butler (Butlers). As co-administrators of the Succession of Arthur P. Butler, they entered into a listing agreement to sell a tract of immovable property owned in indivisión by the Arthur Butler Succession and the heirs of Evans Butler (who were in possession). The listing agreement was with Thomas Bennett, intervenor. Mr. Bennett found a potential purchaser for the property; and defendant, Crescent Land and Development Co., Inc. (CLADCO), and the Butlers entered into the first of three *1165 successive agreements to purchase or sell. This first, however, was actually only an offer by CLADCO through Rudy P. Brown, its president, to purchase for the sum of $496,320.00. While the acceptance lines of the standard form were signed by the Butlers, they and Mr. Bennett testified that the Butlers were actually rejecting the price offered and were making a counter offer. The words “counter offer” were written on the bottom of this first agreement which was dated May 13, 1982. The reverse of this form was also signed by the Butlers and CLADCO, above the following conditional language, which was in the handwriting of Mr. Bennett:
This sale is condition upon court approval of Arthur Butler Succession and all his legal heirs in the succession, (sic)
This purchase agreement shall be binding when accepted by both Co-administrators in Aurthur Butler Succession and by all legal heirs in the succession, (sic)
CLADCO initialled each conditional clause.
Following this apparent rejection of CLADCO’s first offer, Mr. Bennett prepared a second agreement to purchase or sell on May 14, 1982, on the same kind of form. The price offered this time was $517,000.00. All parties signed this agreement, which obligated CLADCO to deposit ten percent of the purchase price and stipulated that the act of sale would be passed on or before November 30, 1982. The agreement also stipulated a seven percent commission for Thomas Bennett Realty, Inc. The parties signed the back of this agreement above the same conditional language which was contained in the May 13th agreement, but CLADCO didn’t initial to the left as it had previously.
After consultation concerning the legal requirements with regard to the sale of succession property, counsel for the Butlers drafted yet another agreement to purchase or sell which was dated May 20, 1982. This agreement differed in several respects from the previous two. It was not on a standard form but was specially prepared and typed by the Butler’s attorney, the description of the property to be sold was much more detailed and specific, it omitted some of the “not applicable” standard clauses, and CLADCO’s obligation to make a ten percent deposit did not arise until “immediately after court approval of the sale.” The most important change, however, and the one which ultimately led to this litigation, was in the conditional language:
This sale is conditioned upon Court approval in the Arthur Butler Succession. This purchase agreement shall be binding when accepted by both co-administrators, and the Court in the Arthur Butler Succession and by all co-owners of Lot H-320E. [the heirs of Evans Butler] This offer remains binding and irrevocable through June 30, 1982....
The Butlers signed on May 21, 1982. However, a petition to sell the property was not filed until June 14; and the court did not approve the sale until July 27, 1982.
Mr. Bennett then notified CLADCO that approval had been obtained and requested deposit of the ten percent. CLADCO refused, and this litigation resulted. (The property has since been sold by its co-owners, and Mr. Bennett has received a commission on that sale.)
The Butlers demand as liquidated damages the $51,700.00 deposit agreed to by CLADCO under the purchase agreement. Mr. Bennett has intervened for his commission. CLADCO’s position is that the agreement to purchase or sell expired on June 30,1982, prior to court approval, and that it is therefore released from any obligations under the agreement.
We must decide whether court approval had to be obtained before June 30th for the agreement to be binding on the parties.
Two alternate interpretations of the agreement are offered:
1. The Butlers and Mr. Bennett contend that the existence and enforceability of the May 20th agreement was conditioned only upon acceptance by all sellers, with court approval necessary only for the sale and not for a valid, binding agreement;
*1166 2. CLADCO contends that the existence and enforceability of the agreement was conditioned upon acceptance by the court in the Succession of Arthur Butler, i.e., court approval.
We must interpret this 1982 contract under the obligation articles in effect prior to the amendment of Titles III & IV of Book III of the Civil Code in 1984. (Acts 1984, No. 831, Sec. 1, effective January 1, 1985) La.-C.C. art. 8. These articles and the applicable jurisprudence provide the proper guidelines.
Contracts which are clear and unambiguous need no interpretation beyond the words of the agreement themselves. Where the intent of the parties is clear from the contract language, that language should not be disregarded while searching for the “spirit” of the agreement. Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982); Condoll v. Johns-Manville Sale Corp., 448 So.2d 169 (La.App. 5th Cir.1984); West Side Funeral Home, Inc. v. Nicholas, 425 So.2d 837 (La.App. 5th Cir.1982). Contracts so ambiguous as to evidence a lack of “common intent”, however, are no contracts at all. Sims-Smith, Ltd. v. Stokes, 466 So.2d 480 (La.App. 5th Cir.1985); West Side Funeral Home, Inc. v. Nicholas, supra. Between these extremes lie contracts whose terms require interpretation.
Several relevant rules for the interpretation of contracts exist. They may be interpreted by reference to other agreements between the same parties on the same subject. Former La.-C.C. art. 1949 (now art. 2045); Crow Drilling & Producing Co. v. Hunt, 254 La. 662, 226 So.2d 487 (1969); Renaudin v. Zapata Development Corporation, 339 So.2d 942 (La.App. 4th Cir.1976) writ denied 341 So.2d 1123 (La.1977). They must be interpreted as a whole. Former La.-C.C. art. 1955 (now art. 2050); Pendleton v. Shell Oil Co., 408 So.2d 1341 (La.1982); West Side Funeral Home, Inc. v. Nicholas, supra. Ambiguities should generally be resolved against the drafter of the contract or against the seller of property. La.-C.C. art. 2474 and former La.-C.C. art. 1957 (now art. 2057); Cochran v. Crosby, 433 So.2d 900 (La.App. 5th Cir.1983).
The contract in question contains a suspensive condition concerning court approval.
La.-C.C.P.Art. 3281:
B. A succession representative may execute, without prior court authority, an agreement to sell succession property at private sale, subject to the suspensive condition that the court approve the proposed sale.
Former La.-C.C.Art. 2038 (now art. 1773):
When an obligation has been contracted on condition that an event shall happen within a limited time, the condition is considered as broken, when the time has expired without the event having taken place. If there be no time fixed, the condition may always be performed, and it is not considered as broken, until it is become certain that the event will not happen.
No date is given for the performance of that condition, and the opposing parties gave conflicting interpretations. The trial judge concluded that approval was needed by June 30, 1982, failing which an enforceable agreement never came into existence.
The Supreme Court and the circuits have considered similar cases. Specific performance was denied where court approval of a sale was not obtained in Bornemann v. Richards, 245 La. 851, 161 So.2d 741 (1964). The case of Creely v. Leisure Living, Inc., 423 So.2d 1224 (La.App. 5th Cir.1982), affirmed 437 So.2d 816 (La.1983), involved an agreement to purchase or sell with a suspensive financing condition. The failure to obtain financing rendered the contract null and void, and the agent/plaintiff was denied recovery of his commission. In Wigwam, Inc. v. Judice, 345 So.2d 564 (La.App. 4th Cir.1977), writ denied 349 So.2d 326 (La.1977), an agreement to sell property subject to stockholder approval fell when such approval was not obtained prior to the expiration of the offer. Later *1167 approval did not serve to ratify and revive the lapsed agreement.
We approve the result in these cases and find it applicable to this instant litigation.
The Butlers and Mr. Bennett argue that, under this interpretation of the agreement, they might have had insufficient time to obtain the necessary court approval. Forty days lapsed, however, from the signing on May 21st until the June 30th expiration; and this was a sufficient time to advertise and obtain court approval. La.-C.C.P. arts. 3281 and 3282; La.R.S. 43:203(3). Parties are free to make difficult or inconvenient contracts for themselves, and courts will not remake these contracts for them. Leenerts Farms, Inc. v. Rogers, supra; Schwarz v. Bourgeois, 422 So.2d 1176 (La.App. 4th Cir.1982), writ denied 429 So.2d 153 (La.1983). In any event, the Butlers are bound by the terms of their agreement. They were represented by counsel; and, in fact, their counsel drafted the agreement.
The trial judge concluded that the parties intended that June 30,1982, be the deadline for performance of the suspensive condition. He had the benefit not only of the documents in evidence but also of the conflicting testimony of the witnesses interpreting those documents. We cannot say he was clearly wrong in holding that an enforceable agreement never came into existence because of the failure of its suspen-sive condition and therefore affirm the judgment dismissing the claims of the Butlers and Mr. Bennett. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973). Appellants must pay all costs of this appeal.
AFFIRMED.