11WILLIAM N. KNIGHT, Judge Pro Tem.
Plaintiff appeals from the trial court’s judgment ordering specific performance of an agreement to buy/sell immovable property in Kaplan, Louisiana, and awarding defendant damages for delay of the execution of this agreement.

FACTS

On December 23, 1993, defendant, Phillip D.J. Simon, individually, and as executor of the Succession of Sterling P. Simon, entered into an agreement to sell immovable property in Kaplan, Louisiana with plaintiff, Liberty Rice Mills, Inc. The agreement specifically provided that Liberty would pay Simon $35,-000.00 for this immovable property and that the “closing of the sale shall be on or before the 1st of February, 1994 or within 7 days after objections to title have been cured, whichever date is later.”
|2On January 6 and 7,1994, Simon published a notice to sell immovable property at private sale in the Abbeville Meridional which included the following description of property:
All of Block 7 and Lots 1, 2, 3, 4 and 5 of Block 11, Southside Addition to the Town of Kaplan, Louisiana.
On January 19, 1994, Simon then filed a petition for authority to sell the immovable property at private sale, and the trial court subsequently approved of this sale on January 24, 1994. However, Simon and Liberty did not “close” the sale of this property on February 1,1994.
On February 11, 1994, Simon filed an amended petition for authority to sell the immovable property at private sale because the following described property was omitted from his original petition:
That certain tract of land with all improvements thereon and all furnishings and equipment therein described as 23 feet North and South between parallel lines running east and west a distance of 280 feet bounded North by Block 7 of the South Side Addition to the City of Kaplan, Louisiana; east by North Church Avenue, South by Texas and New Orleans Railroad Right of Way; and West by North Hebert Avenue; acquired by Sterling P. Simon and Ouida Gooch Simon by Entry No. 133415 of the records of Vermillion Parish, Louisiana.
Also, Simon published a notice to sell immovable property at private sale in the Abbeville Meridiem on February 3 and 4, 1994. The trial court approved the amended petition to sell the immovable property on February 14, 1994.
In mid February, Simon requested that the sale be “closed”, but Liberty refused, alleging that Simon was not in a position to sell the property on February 1,1994, and as such, the agreement had expired. When Simon continued to persist that the agreement to sell be “closed”, Liberty filed a petition for declaratory judgment on April 6, 1994, requesting that the trial court dissolve the agreement. In response, Simon filed a re-conventional demand for specific performance and damages.
laA trial on the merits was eventually heard on January 10, 1995, and the trial court rendered judgment in favor of Simon on January 18,1995. The trial court ordered the specific performance of the December 23, 1993 agreement to sell and awarded Simon $20,617.89 in damages that were occasioned by the delay of the purchase.
Liberty appeals from that judgment and asserts that the trial court erred in (1) concluding that an executor could enforce the agreement to sell wherein the executor had not fulfilled the legal requirements needed to obtain court authorization for the sale; and (2) not concluding that the agreement to sell should have been canceled because of de- *568 struetion of part of the improvements on the immovable property.

LAW

La.Code Civ.P. art. 3281, which sets forth the requirements for a succession representative who wants to sell succession property at a private sale, states, in pertinent part, that:
A. A succession representative who desires to sell succession property at private sale shall file a petition setting forth description of the property, the price and conditions of and the reasons for the proposed sale. If an agreement has been executed in accordance with Paragraph B of this Article, a copy of such agreement shall be annexed to the petition.
B. A succession representative may execute, without prior court authority, an agreement to sell succession property at private sale, subject to the suspen-sive condition that the court approve the proposed sale.
The succession representative shall then publish at least twice in the parish where the succession proceeding is pending a notice of the application to sell the succession property at private sale. La.Code Civ.P. art. 3282. This notice shall state that any opposition to the proposed sale must be filed within 7 days from the date of the last publication. Id. The first newspaper advertisement shall be published at least 20 Udays before, and the second newspaper advertisement shall be published the day before, the commencement of the delay allowed for the filing of opposition to the proposed sale. La.R.S. 43:203(3).
If an agreement to sell has been executed and the price and conditions fixed by the court are the price and conditions set forth in the agreement, the order of the court authorizing the sale under the agreement shall fulfill the suspensive condition of the agreement, which thereafter shall be enforceable by the parties. La.Code Civ.P. art. 3284(A). Thus, a succession representative does not have the power to obligate the succession to sell its property at private sale without having first obtained authority from the court, following a petition and advertisement as required by the law. Hamilton v. McKee, 371 So.2d 1115 (La.1979).
In the case sub judice, Simon and Liberty had agreed to “close” the sale on or before February 1, 1994. Therefore, Simon was required to obtain the proper court approval to sell the succession property before that date. A review of the following relevant facts clearly indicates that he did not obtain proper court approval to sell the immovable property by February 1,1994.
As previously stated, Simon first published the notice to sell the immovable property at private sale on January 6 and 7, 1994. In both advertisements, it was specifically stated that court approval would be given after the expiration of 7 days from the last publication of the notice. However, this notice was clearly not advertised at least 20 days before, and at least one day before, the commencement for filing opposition to the proposed sale. Additionally, Simon’s January 17, 1994 petition omitted a portion of the succession property to be sold at the private sale. Therefore, a valid description of the property was not given as required by Article Is3281. Finally, Simon failed to attach the December 23, 1993 agreement to his petition, which is also mandated by Article 3282.
We find that due to these numerous and substantial defects, the trial court did not properly approve of the sale on January 24, 1994. At that point, the agreement to sell was still subject to the suspensive condition of proper court approval. Thus, when Simon failed to perform the suspensive condition by February 1, 1994, the agreement to sell never came into existence, and, therefore, was not enforceable.
Our conclusion is bolstered by two decisions involving La.Code Civ.P. art. 3281. In Bornemann v. Richards, 245 La. 851, 161 So.2d 741 (1964), Walter E. Bornemann, the testamentary executor of the succession of Carla Helhners Bomemann, instituted a specific performance action against Loretto McKenna Richards to take title to certain residential property in New Orleans, owned by the succession, in accordance with an agreement to sell entered into by the parties. The supreme court, in denying Bornemann’s *569 specific performance claim, stated, in pertinent part, that:
A further reason why we are of the opinion that this plaintiff is not entitled to retain defendant’s deposit is that the agreement to purchase was made subject to a suspen-sive condition, and the partial destruction of the flower garden occurred prior to the happening of the conditioning event. It must be remembered that the property at No. 1630 Arabella Street belonged to a succession, and it was to be transferred at a private sale. Such action required court approval following due advertisement of the proposed sale. Louisiana Code of Civil Procedure Articles 3281 to 3284. Because of this requirement the agreement entered into between the plaintiff and defendant on November 14, 1961 was particularly made “Subject to Court Approval.” That condition suspended the effectiveness of the agreement until the happening of the event, and until the granting of court approval neither party had a right to enforce specific performance. Revised Civil Code Articles 2043, 2471 (which deals with completed sales), and Wampler v. Wampler, 239 La. 315, 118 So.2d 423 [(1960)].
Bornemann, 245 La. at 856, 161 So.2d at 746.
|6In Butler v. Crescent Land & Development Company, 499 So.2d 1163 (La.App. 5 Cir.1986), Joshua L. Butler, Jr. and Newman Butler, as co-administrators of the succession of Arthur P. Butler, entered into an agreement to sell some immovable succession property with Crescent Land & Development Company (CLADCO). This agreement, which was signed by the parties on May 21, 1982, had an irrevocable offer through June 30, 1982. However, the Butlers did not file a petition seeking court approval to sell the property until June 14, 1982, and the trial court did not approve the agreement until July 27, 1982. CLADCO was then notified that court approval had been obtained and was requested to make the ten percent deposit on the property. CLADCO refused, and the Butlers brought suit alleging that CLADCO breached the agreement to sell.
The trial court determined that a suspen-sive condition failed and that there was never a binding contract. In affirming the trial court’s decision, the Fifth Circuit noted that the contract contained a suspensive condition concerning court approval and cited La.Code Civ.P. art 3281. The court then stated:
The trial judge concluded that the parties intended that June 30, 1982, be the deadline for the performance of the suspensive condition. He had the benefit not only of the documents in evidence but also of the conflicting testimony of the witnesses interpreting those documents. We cannot say he was clearly wrong in holding that an enforceable agreement never came into existence because of the failure of its sus-pensive condition and therefore affirm the judgment dismissing the claims of the Butlers and Mr. Bennett. [Cites omitted.]
Butler, 499 So.2d at 1167.
Thus, we conclude that the trial court was incorrect in holding that the December 23, 1993 agreement to sell became enforceable, and, as such, Simon had the right of specific performance from Liberty.

17CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed. Costs of this appeal are assessed against Phillip D.J. Simon.
REVERSED.